STATE of Utah, Plaintiff and Appellee,

v.

Louis Lee MACIAL, Defendant and Appellant.

No. 920316–CA.

Court of Appeals of Utah.

April 26, 1993.

Certiorari Denied Sept. 21, 1993.

James A. Valdez and Ronald S. Fujino, Salt Lake City, for defendant and appellant.

Jan Graham and Charlene Barlow, Salt Lake City, for plaintiff and appellee.

Before GREENWOOD, JACKSON and RUSSON, JJ.

RUSSON, Associate Presiding Judge:

Louis Lee Macial appeals his convictions of three counts of distributing, or agreeing, consenting, offering or arranging to dis-

tribute a controlled substance, each a second degree felony, in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (Supp.1992). We affirm.

## FACTS

The facts pertinent to this appeal relate to the questioning and challenge of a prospective juror, Bettye English. At the outset of voir dire, all prospective jurors gave synopses of their backgrounds. The trial court then asked the panel if any of them had ever been a party to a lawsuit. Eight people, including English, raised their hands. The first six stated their involvements in open court. However, when the court called on English, she asked to approach the bench. After an off-the-record discussion among English, the trial judge and counsel, another prospective juror, Juror Number Eleven, asked to approach the bench. Following an exchange with Juror Number Eleven, the court instructed English and Juror Number Eleven to write notes about their respective involvements in lawsuits.

The court subsequently asked if anyone on the panel had family members or friends in law enforcement. English responded that her daughter worked for the Federal Bureau of Investigation. When asked what her daughter did, English replied, "Am I supposed to say it out loud?" The court then asked if her daughter was an agent, to which English responded that she didn't know.

Following voir dire, challenges for cause were made outside the presence of the panel. The State challenged Juror Number Eleven because he had been convicted of a felony similar to the one in the case at bar and had demonstrated obvious negative feelings about narcotics agents and his own arrest and conviction. The challenge was sustained.

After excusing Juror Number Eleven, the court stated:

Let me just indicate this, that the note that Mrs. Bettye English wrote reads as follows—I don't want this note in the file. She doesn't want it in the file.... Reads: "I Bettye English, was attempt-

ing to sue the Board of Education because I was terminated from my job through discrimination because I did not have EEO involved...."

The trial court and counsel also discussed the fact that a detective who was a witness in the case told counsel for the State that he had gone to school with one of English's children. No challenge for cause was made against English.

Both counsel exercised their peremptory challenges, and the State struck English. Defense counsel objected, noting that English was the only black person on the panel and alleging that she was stricken "simply because she's a member of a minority race." The trial court asked counsel for the State to articulate his reasons for the peremptory challenge, to which he replied:

I felt, based on her unwillingness to speak before the rest of the group about a matter that I didn't find—I'm sure she felt that it was personal, naturally, but her note indicated she had a lawsuit against the school district. I didn't see it to be something that was so personal that it would be embarrassing to speak of before the group.

Frankly, I found her, for lack of a better term, to be somewhat whiny. I don't think she would be a good juror with the other jurors. And that was the sole basis. It had nothing to do with her race or anything else.

The trial court found the explanation acceptable, noting:

All right. You have made the record. I mean—well, what [counsel for the State] has said to me, to my mind, justifies, for reasons other than race, his peremptory challenge. What he has said corresponded with my observations of Ms. English's demeanor, and that's why I ruled that the reasons stated by [counsel for the State] are not made up ... but, in fact, make sense to me. That is the reason he did what he did rather than doing it for reasons of race.

The case was subsequently tried, and Macial was convicted of three counts of

distributing, or agreeing, consenting, offering or arranging to distribute a controlled substance.

Macial appeals, claiming that the trial court erred in determining that the State's peremptory challenge of English was not racially motivated.

### STANDARD OF REVIEW

■ The trial court's factual findings as to whether purposeful discrimination in the use of the prosecution's peremptory challenges has occurred will only be set aside if clearly erroneous. *State v. Cantu,* 778 P.2d 517, 518 (Utah 1989). However, if purposeful discrimination is ultimately found, reversal of the defendant's conviction is mandated, without regard to the harmlessness of the constitutional error. *Batson v. Kentucky,* 476 U.S. 79, 100, 106 S.Ct. 1712, 1725, 90 L.Ed.2d 69 (1986).

### ANALYSIS

On appeal, Macial claims that the State's peremptory challenge of English was racially motivated and amounted to purposeful discrimination. The State responds that its challenge was not racially motivated, and that such is clearly demonstrated by its race-neutral explanation for the challenge.

■ A party attacking a peremptory jury challenge on equal protection grounds must establish a prima facie case of purposeful discrimination; if such a case is proven, the challenged party must provide a race-neutral explanation to rebut the prima facie case. *Batson v. Kentucky,* 476 U.S. 79, 93–94, 106 S.Ct. 1712, 1721, 90 L.Ed.2d 69 (1986); *accord State v. Span,* 819 P.2d 329, 338 (Utah 1991). However, such explanation "need not rise to the level justifying exercise of a challenge for cause." *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723.

### Prima Facie Case

In *State v. Cantu,* 778 P.2d 517 (Utah 1989), the Utah Supreme Court set forth the elements necessary to establish a prima facie case of purposeful discrimination:

"(1) as complete a record as possible, (2) a showing that persons excluded belong to a cognizable group under the representative cross-section rule, and (3) a showing that there exists a 'strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias.'" *Id.* at 518 (quoting *People v. Wheeler,* 22 Cal.3d 258, 280, 148 Cal.Rptr. 890, 905, 583 P.2d 748, 764 (1978)); *accord State v. Pharris,* 846 P.2d 454, 462 (Utah App.1993).

■ While the defendant has the threshold burden of establishing a prima facie case of purposeful discrimination by the prosecutor in exercising a peremptory challenge, *Batson,* 476 U.S. at 93, 106 S.Ct. at 1721, where the prosecutor fails to contest that the defendant satisfied such burden at trial and merely provides a rebuttal explanation for such challenge, the issue of whether a prima facie case was established becomes irrelevant. *State v. Harrison,* 805 P.2d 769, 777 (Utah App.), *cert. denied,* 817 P.2d 327 (Utah 1991).

In the case at bar, the State concedes that it did not raise the issue of whether Macial had established a prima facie case of purposeful discrimination at trial, and thus acknowledges that, pursuant to *Harrison,* such portion of the *Batson* inquiry is moot. Accordingly, we next examine whether the State provided a race-neutral explanation to rebut Macial's allegation that it was racially motivated in exercising its peremptory challenge. *See id.*

### Rebuttal

■ In *Cantu,* the Utah Supreme Court stated that in order to rebut an allegation of purposeful discrimination in exercising a peremptory challenge, the explanation given by the prosecutor for the challenge must be "(1) neutral, (2) related to the case being tried, (3) clear and reasonably specific, and (4) legitimate." *Cantu,* 778 P.2d at 518 (quoting *State v. Butler,* 731 S.W.2d 265, 268 (Mo.App.1987)); *accord Batson,* 476 U.S. at 97–98, 106 S.Ct. at 1723–24.

In the case at bar, the State provided the following explanation for challenging English:

I felt, based on her unwillingness to speak before the rest of the group about a matter that I didn't find—I'm sure she felt that it was personal, naturally, but her note indicated she had a lawsuit against the school district. I didn't see it to be something that was so personal that it would be embarrassing to speak of before the group..

Frankly, I found her, for lack of a better term, to be somewhat whiny. I don't think she would be a good juror with the other jurors. And that was the sole basis. It had nothing to do with her race or anything else.

As to the first prong under *Cantu*, Macial claims that the State's inconsistent bases for challenging English and Juror Number Eleven demonstrate that the State's explanation for challenging English was not race-neutral. *See Butler*, 731 S.W.2d at 271. Specifically, he argues that, in contrast to English, the State did not base its challenge to Juror Number Eleven on his reluctance to discuss his prior involvement in a lawsuit in open court, and that this demonstrates that English was challenged because of her race association. Such argument is without merit.

First, the State's challenges to English and Juror Number Eleven were of different types, thus precluding comparison in this case. The State challenged Juror Number Eleven "for cause" on the basis that, pursuant to Utah Code Ann. § 78–46–8(2)(a) (1992), he, as a convicted felon, was not competent to serve as a juror.[1] The trial court, in sustaining the State's challenge to Juror Number Eleven for cause, noted:

The statute on qualifications of jurors appears to be unequivocal and unconditional on its face. And that's how you construe it, and that is an expunged felony is still a felony for the purpose of the juror qualifications statute.

In contrast to Juror Number Eleven, the State challenged English by peremptory challenge, which by its very nature does not, at the outset, require any reasoning or justification. *See* Utah R.Crim.P. 18(d).

Even more importantly, Juror Number Eleven articulated a reasonable basis for his hesitancy in discussing his involvement in a prior lawsuit in front of the panel of prospective jurors. Specifically, he noted that his involvement stemmed from a felony conviction which had previously been expunged. Accordingly, all records in regard to his involvement in that case had been sealed by court order, *see* Utah Code Ann. § 77–18–2(1)(c) (Supp.1992), and he could respond to certain inquiries "as though the arrest or conviction did not occur." Utah Code Ann. § 77–18–2(3) (Supp.1992). In fact, the trial court recognized the import of maintaining Juror Number Eleven's privacy with regard to this matter, stating: "This is a private matter and I think the expungement statute is certainly meant to protect you in these types of matters. So you don't have to tell the world about it...."

Unlike Juror Number Eleven, English did not articulate any basis for her reluctance to discuss her involvement in a prior lawsuit in open court. Further, given the nature of her involvement, particularly in contrast to Juror Number Eleven's involvement, and the fact that six other prospective jurors had previously discussed their respective involvement in various lawsuits in front of the panel, there was no apparent basis for English's hesitancy in discussing the same. Accordingly, based on the foregoing, Macial's claim that the State's disparate treatment of English and Juror Number Eleven demonstrates that the State's explanation was not race-neutral fails.

As to the State's proffered explanation for its challenge to English, the trial court correctly determined that such explanation was neutral. The State explained that it was concerned with English's unwillingness to speak before the panel of prospec-

---

1. Section 78–46–8(2) provides:
   The following persons are not competent to serve as jurors:
   (a) a person who has been convicted of a felony.

tive jurors concerning her prior involvement in a lawsuit. Based on that, the State believed that "she would [not] be a good juror with the other jurors." Such explanation was void of any reference, either explicit or implicit, to English's race, and was even corroborated by the court, which stated:

> All right. You have made the record. I mean—well, what [counsel for the State] has said to me, to my mind, justifies, for reasons other than race, his peremptory challenge. What he has said corresponded with my observations of Ms. English's demeanor, and that's why I ruled that the reasons stated by [counsel for the State] are not made up ... but, in fact, make sense to me. That is the reason he did what he did rather than doing it for reasons of race.

Accordingly, the first prong of *Cantu* was satisfied here.

Further, the State's explanation was related to the case being tried. After observing English's demeanor in relation to the panel of prospective jurors in this case, particularly her reluctance to speak before the panel, the State challenged English on the basis that such behavior may portend a similar hesitancy or reluctance in relating to the other jurors. Such explanation explicitly reflects the State's concern for English's capacity to serve as a juror in this specific case, and thus satisfies the second prong set out in *Cantu*.[2]

Also, the State's explanation for challenging English was clear and reasonably specific. The State plainly articulated that because English was unwilling to speak before the other prospective jurors about matters which seemed inconsequential, such would affect her role as a functioning juror with the other jurors in this case. Further, contrary to Macial's claim, there was support for such explanation in the record. *See People v. Washington,* 188 Cal.App.3d 794, 234 Cal.Rptr. 204, 211 (1987). The record reveals two separate instances during voir dire in which English was unwilling to respond to routine questions in open court with no articulable or apparent basis for doing so.

Finally, the State's explanation for its challenge to English was legitimate. Given English's repeated reluctance to speak out during voir dire, the State logically perceived that, if impaneled, English could not relate effectively with the other jurors.[3] Recognizing the critical importance of the interrelationship of jurors in any trial, such explanation or concern was a legitimate basis for English's peremptory challenge. Accordingly, the State has satisfied the four pronged test under *Cantu*.

However, in *Cantu,* the Utah Supreme Court identified several additional factors "that may cast doubt upon the legitimacy of a purportedly race-neutral explanation." *Cantu,* 778 P.2d at 518. These include:

> (1) alleged group bias not shown to be shared by the juror in question, (2) failure to examine the juror or perfunctory examination, assuming neither the trial court nor opposing counsel had questioned the juror, (3) singling the juror out for special questioning designed to evoke a certain response, (4) the prosecutor's reason is unrelated to the facts of the case, and (5) a challenge based on reasons equally applicable to juror [sic] who were not challenged.

*Id.* at 518–19 (quoting *State v. Slappy,* 522 So.2d 18, 22 (Fla.1988) *cert. denied,* 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988)) (citation omitted); *accord State v. Span,* 819 P.2d 329, 342–43 (Utah 1991); *State v. Pharris,* 846 P.2d 454, 463–64 (Utah App.1993).

---

**2.** Macial nonetheless argues that the trial court should have discounted the State's proffered explanation because the State did not allege a specific bias on the part of English, citing *Cantu,* 778 P.2d at 519. However, Macial misconstrues *Cantu.* In that opinion, the Utah Supreme Court did not hold that the State had to allege a specific bias of the part of a juror, but stated instead that the State's proffered explana-tion must simply be reasonably related to the case at bar. *Id.* at 518.

**3.** This explanation seems particularly legitimate in light of the fact that the trial court, in sustaining the State's peremptory challenge to English, noted that its observations of her corresponded with the State's.

In the instant case, Macial claims that the State's purported race-neutral explanation should be discredited under the first and fifth factors outlined in *Cantu*. Specifically, he argues that the State did not show that English shared a particular group bias, and that the State's basis for challenging English was equally applicable to Juror Number Eleven, who was not challenged on such basis.

However, the first factor outlined in *Cantu* is inapplicable in the case at bar since the State did not exercise its peremptory challenge to English on the basis of an alleged group bias. Rather, the State challenged English for her recurring unwillingness to speak before other prospective jurors in open court. With reference to the fifth factor under *Cantu*, as noted above, the challenge to English was not equally applicable to Juror Number Eleven, and the disparate treatment in challenging the two jurors was justified under the specific facts of this case.[4]

Based on the foregoing, the State effectively rebutted Macial's allegation of purposeful discrimination in exercising its peremptory challenge of English by providing a neutral, legitimate, reasonably specific explanation relating to the case at bar. *See Cantu*, 778 P.2d at 518; *Batson*, 476 U.S. at 97–98, 106 S.Ct. at 1723–24.

## CONCLUSION

We conclude that the trial court properly determined that the State's peremptory challenge of English was not racially motivated. Accordingly, Macial's convictions are affirmed.

GREENWOOD and JACKSON, JJ., concur.

---

**4.** Moreover, our review of the record in this case demonstrates that English was not (1) subjected only to perfunctory examination by the State when neither the trial court nor defense counsel had questioned her, (2) singled out for questioning as to evoke specific responses, nor (3) challenged for a reason not related to the trial. *See Cantu*, 778 P.2d at 518–19.