STATE of Utah, Plaintiff and Appellee,

v.

Cora Jean HIGGINBOTHAM,
Defendant and Appellant.

No. 940548.

Supreme Court of Utah.

May 14, 1996.

Jan Graham, Att'y Gen., Marian Decker, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Kent E. Snider, Ogden, for defendant.

HOWE, Justice:

Following a jury trial, defendant Cora Jean Higginbotham was convicted of aggravated robbery, a first degree felony, and possession of a dangerous weapon by a restricted person, a third degree felony. The convictions resulted from the armed robbery of an Ogden, Utah, convenience store in January 1994. For the first degree felony, Higginbotham was sentenced to a term of five years to life, with an additional, consecutive two-year penalty enhancement under Utah Code Ann. § 76-3-203(1). The trial court imposed a concurrent zero- to five-year term for the third degree felony.

## I. PEREMPTORY CHALLENGE

Higginbotham first contends that the trial court committed reversible error in permitting the prosecutor to exercise a peremptory challenge to remove the only minority member of the panel of prospective jurors. When the challenge was made, defense counsel objected, citing *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986) ("[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race...."). The prosecutor at first questioned the juror's minority status but subsequently stipulated that the juror appeared to be a member of a minority group.[1]

The prosecutor offered the following explanation for her exercise of the peremptory challenge:

> [W]hen I was questioning the jury panel, looking at the jurors, this particular juror is the only one who constantly made eye contact with me in—with a facial expression that was very disturbing to me. It was apparently a—a hostile expression. She was looking right at me as if she was [sic] drilling holes through me. That's the reason I took her off, pure and simple.
>
> . . . .
>
> ... [L]ooking around from juror to juror and from face to face ... my eyes continually returned to her as the woman sitting on the back row who was looking directly at me, unblinking, with what I term as a facial expression of hostility. And the other jurors, while I wouldn't describe that they're my friends, did not have expressions similar to hers whatsoever.

1. In her motion for a new trial, Higginbotham submitted an affidavit signed by the dismissed juror in which the juror identified her national origin as "White with Hispanic Background."

The prosecutor stated that it was not her practice to take persons off the panel because of their minority status and noted that at a recent trial where she was the prosecutor, several minorities remained on the jury. She admitted that the peremptory challenge was not based upon the juror's responses to the voir dire questions.

Defense counsel requested follow-up voir dire to establish whether the juror harbored any hostility. The trial court denied the request on the assumption that the juror would deny feeling any hostility. The court then stated, "[T]o say that [the prosecutor] can't strike [the juror] because she doesn't like her body language, takes away the discretion that I think is impliedly within peremptory challenges." The court asked the prosecutor whether the peremptory challenge was racially motivated; she responded that it was not. Defense counsel stated that he was not challenging the prosecutor's credibility, but that he wanted to preserve the issue for appeal. The trial court allowed the peremptory challenge to stand.

Following the trial, Higginbotham challenged the trial court's ruling in a motion for a new trial and for arrest of judgment on the ground that the prosecutor's peremptory challenge had been racially motivated. Following a hearing on the matter, the trial court denied the motion:

[The] court finds [the prosecutor's] explanation for the peremptory challenge to be [race] neutral, clear and specific, related to the interest of obtaining an impartial jury, and a legitimate basis of excluding a juror. Further, since the defendant is caucasian, the exclusion of a Hispanic from the venire for race seems remote to the Court.

Moreover, the court reposes confidence in [the prosecutor], that her explanation was not a pretext to a racially motivated peremptory challenge....

The court finds that there is no purposeful discrimination.

■■■■ Under *Batson v. Kentucky* and its progeny, the parties in a criminal action are prohibited from engaging in purposeful racial discrimination in exercising peremptory challenges of potential jurors. *Batson*, 476 U.S.

at 90, 106 S.Ct. at 1719; *Georgia v. McCollum*, 505 U.S. 42, 49, 112 S.Ct. 2348, 2353, 120 L.Ed.2d 33 (1992). The United States Supreme Court recently reaffirmed the manner in which a trial court should conduct a *Batson* analysis:

Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination.

*Purkett v. Elem,* —— U.S. ——, ——, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834, 839 (1995) (per curiam); *accord State v. Cantu,* 778 P.2d 517, 518 (Utah 1989) *("Cantu II").* We examine each of these steps in turn.

■■■■ The prima facie case of racial discrimination is required to "separate meritless claims of discrimination from those that may have merit." *State v. Alvarez,* 872 P.2d 450, 455 (Utah 1994) (citation omitted). The mere fact that the subject of the peremptory strike is a minority member does not establish a prima facie case. *State v. Cantu,* 750 P.2d 591, 597 (Utah 1988) *("Cantu I").* Instead, we have identified three elements necessary to its establishment. *See Alvarez,* 872 P.2d at 456 (holding that defendant failed to make out prima facie case). We need not examine these elements here. Where the proponent of the peremptory challenge fails to contest the sufficiency of the prima facie case at trial and merely provides a rebuttal explanation for the challenge, the issue of whether a prima facie case was established is waived. *State v. Macial,* 854 P.2d 543, 545 (Ct.App.), *cert. denied,* 862 P.2d 1356 (Utah 1993); *State v. Harrison,* 805 P.2d 769, 777 (Ct. App.), *cert. denied,* 817 P.2d 327 (Utah 1991). Here the prosecutor did not contest the adequacy of defense counsel's prima facie case and instead attempted to rebut the accusation with evidence that her challenge was properly exercised. Therefore, whether a prima facie case was established is not relevant to our analysis.

■ Step two requires the prosecutor to come forward with a race-neutral explanation for the challenge. Here, the prosecutor explained that the challenge was due to the juror's hostile facial expressions toward her. Specifically, the prosecutor described the juror's constant, unblinking eye contact with her during voir dire "as if she was [sic] drilling holes through me." The prosecutor's reason for the challenge is facially valid as it does not demonstrate a discriminatory intent. *See Purkett,* —— U.S. at ——, 115 S.Ct. at 1771, 131 L.Ed.2d at 839 ("Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.").

■ The final step requires the trial court to decide whether the opponent of the peremptory challenge has proved purposeful racial discrimination. This determination generally turns on the credibility of the proponent of the strike and will not be set aside unless it is clearly erroneous. *See Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21; *Cantu II,* 778 P.2d at 518; *State v. Pharris,* 846 P.2d 454, 464–65 (Ct.App.), *cert. denied,* 857 P.2d 948 (Utah 1993). To show clear error, the appellant must marshal all of the evidence in support of the trial court's finding and then demonstrate that the evidence, including all reasonable inferences drawn therefrom, is insufficient to support the findings against an attack. *State v. Moosman,* 794 P.2d 474, 475–76 (Utah 1990); *Grayson Roper Ltd. v. Finlinson,* 782 P.2d 467, 470 (Utah 1989).

Higginbotham points out that neither the trial court nor her trial counsel observed hostile facial expressions from the prospective juror. She also notes that the prosecutor's impressions were not supported by anything the juror stated on voir dire examination. Thus Higginbotham contends that the trial court erred in allowing the peremptory challenge based only on the prosecutor's "unsupported impression" of the juror's facial expressions.

■ Higginbotham has not carried her burden in this case. The trial court was involved in the voir dire process and observed first-hand the prosecutor's demeanor in responding to Higginbotham's allegations of racial discrimination. Following these observations, the court specifically inquired whether the prosecutor had exercised the peremptory challenge for any race-related reason. The prosecutor denied any racial motivation in removing the juror. Higginbotham's trial counsel then stated that he was not challenging the prosecutor's credibility.[2] The court later noted that the prosecutor's reason was clear and specific and made without any hesitation. Although trial courts should be particularly sensitive when facial expressions or body language alone is advanced as the reason for striking a minority juror, these reasons provide a sufficient basis to support the exercise of a peremptory challenge. *See United States v. Ruiz,* 894 F.2d 501, 506 (2d Cir.1990) (facial expressions); *Smith v. Deppish,* 248 Kan. 217, 807 P.2d 144, 152 (1991) (body language); *Allen v. State,* 871 P.2d 79, 90 (Okla.Crim.App.) (facial expressions, lack of eye contact, and dozing off), *cert. denied,* —— U.S. ——, 115 S.Ct. 370, 130 L.Ed.2d 322 (1994).

■ We have held that the reason given by a party to justify a peremptory challenge must be "(1) neutral, (2) related to the case being tried, (3) clear and reasonably specific, and (4) legitimate." *Cantu II,* 778 P.2d at 518 (citing *State v. Butler,* 731 S.W.2d 265, 268 (Mo.Ct.App.1987)); *accord Macial,* 854 P.2d at 545. The trial court made findings in favor of the prosecution on each of these factors. Higginbotham does not mount an argument that any of these determinations were made in error.

In sum, Higginbotham fails to establish any error, let alone clear error, in the trial court's credibility determination. We therefore affirm the trial court's finding that the State successfully rebutted the accusation of

---

2. At the hearing on the motion for new trial, the trial court noted its previous impression that defense counsel was "somewhat satisfied with [the prosecutor's] explanation." Defense counsel responded that the court had misunderstood and that he had "strongly disagreed" with the court's decision. The trial court then entered its findings, specifically addressing the prosecutor's credibility.

purposeful discrimination in exercising its peremptory challenge.[3]

## II. EVIDENCE OF RESTRICTED PERSON STATUS

After the jury found Higginbotham guilty of aggravated robbery, the trial court asked the jury to consider whether she was also guilty of possession of a dangerous weapon by a restricted person under Utah Code Ann. § 76–10–503(2). That section provides, "Any person who is on parole or probation for a felony may not have in his possession or under his custody or control any dangerous weapon...." Utah Code Ann. § 76–10–503(2)(a). The State sought to prove that at the time of the robbery, Higginbotham was (1) in possession of a dangerous weapon (2) while on probation (3) for a felony.

The prosecutor stated that she did not intend to present any additional testimony on this count but offered two documents into evidence.[4] The first was a copy of a "Motion & Order for Bench Warrant for Probation Violation" filed in an Idaho district court in April 1991. The motion was in the form of an affidavit signed by the Ada County prosecuting attorney and stated that Higginbotham[5] had pleaded guilty to a felony charge of issuing checks without funds, that she was placed on probation, and that she had violated the terms of her probation. The order was stamped with a judge's name. The document was not certified.[6] Two other uncertified pages, apparently attached as an addendum to the motion and order, purport to represent Higginbotham's "Restitution Account" and "Payment Agreement."

The second document offered by the State was a copy of a "Bench Warrant for Proba-tion Violation" signed by an Ada County deputy clerk and certified as authentic by "the custodian of law enforcement records for the Boise City Police Department and the Ada County Sheriff's Department." The warrant does not state that Higginbotham was convicted of a felony.

Defense counsel objected to the admission of the documents, contending that the State did not have sufficient evidence to proceed on the charge. More specifically, defense counsel argued that the law requires that the State produce a certified copy of a felony conviction. The trial court overruled the objection and admitted the documents into evidence, holding that the two documents together established Higginbotham's restricted status.

We addressed similar issues in two prior cases, *State v. Lamorie*, 610 P.2d 342 (Utah 1980), and *State v. Long*, 721 P.2d 483 (Utah 1986). Like Higginbotham, the defendant in *Lamorie* was charged with possession of a dangerous weapon while on parole for a felony. 610 P.2d at 343. At trial, a Colorado parole agent testified that the defendant had been under his supervision. Through the agent, the State successfully admitted into evidence copies of court records, certified only by a notary public, to show the defendant's prior felony convictions. *Id.* at 344–45. The defendant was convicted. He appealed, contending that the State failed to establish the elements of the crime.

This court determined that the parole agent had no personal knowledge of the defendant's conviction and that the fact that the defendant was on parole, without more, did not permit the inference that the parole was *for a felony. Id.* at 345. As to the court records, we held that the notary's certifica-

---

3. Chief Justice Zimmerman, in his concurring opinion, opines that it was error for the trial judge to refuse to question the juror because her answers might have undermined the prosecutor's perception that the juror looked and felt hostile toward her. However, defense counsel stated that he did not question the credibility of the prosecutor and therefore even if the prosecutor was mistaken in her perception, it does not aid Higginbotham since a peremptory challenge can be made even for a mistaken reason so long as it is not racially motivated.

4. The documents were stapled together and admitted as a single exhibit. The State also successfully introduced two other exhibits consisting of certified copies of Higginbotham's photograph and fingerprints. On appeal, the State does not argue that these latter exhibits are relevant to the issue at hand. Thus, we do not consider them.

5. The caption lists Higginbotham's previous name, C. Jean Parsons.

6. The prosecutor incorrectly represented to the court that the affidavit was certified.

tion did not constitute proper authentication under the Utah Rules of Evidence requiring attestation " 'by the officer having the legal custody of the record, or by his deputy.' " *Id.* at 346 (quoting Utah R. Evid. 68(1), predecessor to current rule 902(4)). We noted that the certifying notary had neither official nor unofficial custody of the records, nor was she a deputy court clerk. We concluded that the notary's certification failed to satisfy the authentication rule and that the records were inadmissible. *Id.*

The defendant in *Long* was also charged with possession of a dangerous weapon by a restricted person. 721 P.2d at 484. At trial, the State introduced through a Utah parole officer *copies of certified copies* of documents showing that the defendant had been twice convicted of felonies. *Id.* The certified copies from which the copies introduced into evidence were made were part of the defendant's parole file. The defendant was convicted and appealed, contending that the documents used to prove that he was a convicted felon were not properly authenticated. We agreed, noting the lack of evidence to show (1) how the copies got in the parole file, (2) that the copies in the file constituted official documents of the Division of Corrections, or (3) that the parole officer was their official custodian or deputy custodian. *Id.* at 486.

▪ The State contends that the instant case is distinguishable from *Lamorie* and *Long* because the records were properly authenticated and admitted under rule 902(4) of the Utah Rules of Evidence. We disagree. Rule 902 provides for the admissibility of *certified* copies of public records.[7] Although the bench warrant was certified by the custo-dian of records of a county sheriff's office, the motion and order that referred to the felony conviction was not certified by any official. Thus the trial court erred in admitting the motion and order.

▪ Even assuming the Idaho bench warrant was properly certified,[8] it does not, by itself, establish that Higginbotham had been previously convicted of a felony. It merely demands that the probationer be brought before the court to show cause why her probation should not be revoked. Misdemeanants can also be placed on probation. *See* Idaho Code §§ 19–2601(6), 19–3921. Thus the State is left without proof of one essential element of the charge against Higginbotham, i.e., that she was on probation *for a felony.* Accordingly, we reverse Higginbotham's conviction for possession of a dangerous weapon by a restricted person.

▪ We next examine the effect of our reversal. The court in *Lamorie* held, as we do here, that the prosecution failed to prove an essential element of the charge. 610 P.2d at 346. The court remanded for a new trial after reversing the conviction, holding that doing so does not place the accused in double jeopardy because the error giving rise to the reversal, i.e., the trial court's erroneous introduction of evidence, was "trial error" as distinguished from insufficiency of the evidence. *Id.* at 347 (citing *Burks v. United States,* 437 U.S. 1, 14, 98 S.Ct. 2141, 2148, 57 L.Ed.2d 1 (1978)); *accord Long,* 721 P.2d at 487; *State v. Barela,* 779 P.2d 1140, 1145 (Utah.Ct.App.1989).

In a concurring opinion in *Lamorie,* Justice Stewart explained:

[J]ustice is not promoted by simply reversing a conviction without remanding for a

---

7. The rule provides in part:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
>
> . . . .
>
> (4) Certified copies of public records. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office ... certified as correct by the custodian or other person authorized to make the certification....

Utah R. Evid. 902.

8. The warrant, which was not signed by a judge, is certified by a custodian of *law enforcement* records instead of a custodian of *court* records. Higginbotham does not argue that this certification is invalid under rule 902(4) of the Utah Rules of Evidence. Thus we do not address it. Nevertheless, given the apparent confusion over what evidence is required to attain a conviction under section 76–10–503(2), prosecutors would do well to admit into evidence a copy of defendant's prior felony conviction that has been signed by a judge and certified by a custodian of court records.

new trial because some critical evidence may have been erroneously introduced. Indeed in some cases it may be that the prosecutor holds some evidence back to avoid repetition. If the prosecutor does not have admissible evidence available for a retrial, the case will surely be dismissed. But if there is admissible evidence available, a proper balancing of the interest prohibiting double jeopardy and the interest of society in the enforcement of criminal sanctions requires that the trial error not preclude a retrial.

. . . .

... [B]oth the state and the defendant have an interest in an error free determination of the merits of the case.

610 P.2d at 348 (Stewart, J., concurring).[9]

In *Burks,* the United States Supreme Court held that when a defendant's conviction is reversed by an appellate court on the sole ground that the evidence was insufficient to sustain the jury's verdict, the Double Jeopardy Clause bars a retrial on the same charge. 437 U.S. at 14, 98 S.Ct. at 2148. However, reversal for trial error

does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence....

*Id.* at 15, 98 S.Ct. at 2149; *see also Lockhart v. Nelson,* 488 U.S. 33, 34,, 109 S.Ct. 285, 287, 102 L.Ed.2d 265 (1988) (holding that where evidence offered by the State and admitted by the trial court—whether erroneously or not—would have been sufficient to sustain a guilty verdict, Double Jeopardy Clause does not preclude retrial).

Because we reverse Higginbotham's conviction for possession of a dangerous weapon by a restricted person for trial error, we remand for a new trial on the charge.

## III. ILLEGAL SENTENCE ENHANCEMENT

 The trial court enhanced Higginbotham's five-to-life sentence for aggravated robbery with a consecutive two-year term under Utah Code Ann. § 76–3–203(1). That section provides that if a person is convicted of a first degree felony and

if the trier of fact finds a firearm ... was used in the commission or furtherance of the felony, the court shall additionally sentence the person convicted for a term of one year to run consecutively and not concurrently; and the court may additionally sentence the person convicted for an indeterminate term not to exceed five years to run consecutively and not concurrently.

Utah Code Ann. § 76–3–203(1). This section does not authorize a consecutive, determinate two-year term as was given here. *See State v. Cobb,* 774 P.2d 1123, 1129 (Utah 1989). Thus the enhancement term which the trial court imposed is illegal. Accordingly, we remand this case to allow the trial court to correct the determinate two-year sentence enhancement. Utah R.Crim. P. 22(e) ("The court may correct an illegal sentence, or a sentence imposed in an illegal manner, at any time."); *see also State v. Babbel,* 813 P.2d 86, 88 (Utah 1991) (trial court has power to correct illegal sentence "at any time, whether before or after an appeal, and even if there is no appeal"), *cert. denied,* 502 U.S. 1036, 112 S.Ct. 883, 116 L.Ed.2d 787 (1992).

We (1) affirm Higginbotham's conviction for aggravated robbery, (2) reverse her conviction for possession of a dangerous weapon by a restricted person and remand for a new trial, and (3) remand for correction of the illegal two-year sentence enhancement.

STEWART, Associate C.J., and DURHAM and RUSSON, JJ., concur in HOWE's, J., opinion.

ZIMMERMAN, Chief Justice, concurring:

I concur with the majority's analysis, but I write separately to note that I think the trial court erred in denying defense counsel's re-

---

9. In *Lamorie,* Justice Hall wrote the main opinion and was joined by Justice Crockett. Justice Stewart wrote a concurring opinion and was joined by Justice Wilkins. Justice Maughan wrote a dissenting opinion.

quest to question the challenged juror about her allegedly "hostile expression." I nonetheless concur with the result reached by the majority because Higginbotham has not demonstrated that the trial court's error was prejudicial.

The party opposing a peremptory challenge on the ground that it is racially motivated bears the burden of proving purposeful discrimination. *Purkett v. Elem,* — U.S. —, ——, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995) (per curiam). Accordingly, that party should be entitled to present relevant evidence supporting their charge of discrimination. As the majority recognizes, once the proponent of the strike articulates a nondiscriminatory reason for the strike, the determination of whether the opponent has proved purposeful discrimination "generally turns on the credibility of the proponent." Because the credibility of the one exercising the strike is critical, one such as Higginbotham should be allowed to present evidence which would discredit the prosecutor's explanation as to why the minority juror was stricken.

In response to Higginbotham's opposition to the prosecutor's peremptory challenge, the prosecutor explained that "this particular juror is the only one who constantly made eye contact with me in—with a facial expression that was very disturbing to me. It was apparently a—a hostile expression. She was looking right at me as if she was drilling holes through me. That's the reason I took her off, pure and simple." At that point, Higginbotham's counsel requested that he be allowed to question the challenged juror about her alleged hostility. The trial court denied the request.

In response to defense counsel's request to question the juror, the trial court stated that it could be assumed that the juror would deny any hostility and therefore that her testimony would not be helpful. This statement may have been a candid depiction of how the trial judge would have weighed the credibility of the prosecutor against that of a particular juror after hearing the testimony, but it seems quite inappropriate for a trial judge to refuse to hear testimony because the judge has already made the categorical decision that the prosecutor will be believed

and the prospective juror will not. Moreover, it seems possible that the prosecutor's explanation could have been undermined if the juror denied feeling hostile and denied looking at the prosecutor in a hostile manner. Although such denials might not have convinced the trial judge that the prosecutor was intentionally lying (the prosecutor might have simply misinterpreted the juror's expressions), the juror's answers were nonetheless potentially relevant to the prosecutor's credibility. Therefore, I think it was error not to allow Higginbotham's counsel to question the challenged juror.

Having said that, I would still affirm because Higginbotham has not demonstrated that this error was prejudicial. As the appellant, Higginbotham bears the burden of showing not only that an error occurred, but that the error was prejudicial. *See State v. Bell,* 770 P.2d 100, 106 (Utah 1988). Although Higginbotham presented an affidavit of the challenged juror in support of her motion for a new trial, that affidavit is silent as to whether the juror felt hostility toward the prosecutor. Moreover, Higginbotham does not point to anything in the record that suggests what the juror's answers would have been had Higginbotham's counsel been allowed to question her about her alleged hostility. In fact, Higginbotham does not even proffer a guess as to what the juror would have said. Without knowing what the juror would have said, I cannot conclude that the trial court's refusal to allow questioning of the juror was prejudicial.