**STATE of Utah, Plaintiff and Appellee,**

v.

**Gino Joseph MONTOYA, Defendant and Appellant.**

No. 960277–CA.

Court of Appeals of Utah.

Dec. 12, 1996.

Joan C. Watt, Salt Lake Legal Defender's Association, Salt Lake City, for Defendant–Appellant.

Jan Graham, Attorney General and J. Frederic Voros, Jr., Assistant Attorney General, Criminal Appeals Division, Salt Lake City, for Plaintiff–Appellee.

Before DAVIS, Associate P.J., and GREENWOOD and JACKSON, JJ.

DAVIS, Associate Presiding Judge:

Gino Joseph Montoya, pursuant to a plea agreement, pleaded guilty to two counts of aggravated robbery, a first degree felony, in violation of Utah Code Ann. § 76–6–302 (1995); one count of attempted aggravated kidnaping, a first degree felony, in violation of Utah Code Ann. §§ 76–4–102 (1995) (amended 1996) and 76–5–302 (1995) (amended 1995, 1996); and three counts of kidnaping, a second degree felony, in violation of Utah Code Ann. § 76–5–301 (1995), with firearm sentence enhancements on each of the three first degree felonies pursuant to Utah Code Ann. § 76–3–203(1) (1995) (amended 1995). The trial judge imposed sentences of five-years-to-life plus a determinate three-year sentence enhancement on each of the first degree felonies, and one-to-fifteen years on each of the second degree felonies; all sentences were ordered to run consecutively.[1] On appeal, Montoya argues the trial court abused its discretion by (1) ordering his sentences to run consecutively rather than concurrently, and (2) imposing determinate three-year sentence enhancements. We affirm.

## BACKGROUND

On February 3, 1995, while operating traffic radar on State Street, South Salt Lake Police Officer Matthew Jewkes saw Montoya drive past and wondered why he was not in jail. Jewkes had become acquainted with Montoya through his employment as a prison guard while Montoya was an inmate. Jewkes followed Montoya to see if the car he was driving was stolen. Montoya stopped at a friend's home; Jewkes also stopped to speak with Montoya. Following a short conversation, Jewkes and Montoya went their separate ways.

After returning to the police department, Jewkes requested a license plate check from dispatch on the vehicle Montoya was driving. He also requested a warrants check. The warrants check revealed a $10,000 warrant for Montoya's arrest. Jewkes returned to the area where he had left Montoya, but was unable to locate him.

At approximately 11:40 a.m., Jewkes arrived at the Ritz bowling alley where he was meeting a fellow officer for lunch. Montoya was sitting on the stairs at the bowling alley's entrance. Jewkes called for back-up and then approached Montoya. After pat-searching Montoya for weapons, Jewkes told Montoya that he wanted to talk to him. Montoya ran when Jewkes attempted to handcuff him; Jewkes gave chase and notified dispatch of the foot pursuit. Jewkes caught Montoya and the two men scuffled. During their struggle, Montoya took Jewkes's firearm, pointed it at the officer, threatened to kill him, and finally took his police radio before fleeing.[2] Jewkes entered a nearby residence and notified dispatch of the situation.

Meanwhile, Officer McNaughton, who was also familiar with Montoya and who had responded to Jewkes's back-up request, saw Montoya run through the parking lot of a Wendy's restaurant and confront a woman as she waited in the drive-through line. Montoya pointed Jewkes's gun at the woman and commanded that she get out of her car. The woman refused. Montoya then ran away once he spotted McNaughton. McNaughton ordered Montoya to drop the weapon visible in his hand; Montoya failed to comply and continued running.

Montoya then entered a Taco Bell restaurant. McNaughton notified dispatch of Montoya's location. Montoya held hostage the ten individuals present in the restaurant.[3] Officer McNaughton was soon joined by the Salt Lake City Swat Team. Montoya forced

---

1. Fines, restitution, and surcharges were also imposed.

2. When asked whether he agreed with the State's proffer of evidence, Montoya asserted: "I am saying the way they said it, I took [the gun] from his holster thing ... that did not sound right." Instead, Montoya claimed to have picked-up the gun after it fell out of Jewkes's holster. Montoya also contested the State's proffer that he had

threatened to kill Jewkes. Both Montoya and the State conceded that these disputed facts were not necessary elements of the offenses to which Montoya pleaded guilty.

3. Three other people were able to leave the restaurant before being held hostage for any considerable period of time.

the hostages to shield him from police as he negotiated. While in the restaurant, Montoya held his hostages at gunpoint, fired the gun twice, and demanded that police allow him to speak to his mother and his girlfriend. Eventually, after considerable negotiation, Montoya surrendered. None of the hostages were physically injured.

Montoya was charged with one count of aggravated assault, a third degree felony, in violation of Utah Code Ann. § 76–5–103 (1995) (amended 1995); two counts of aggravated robbery, a first degree felony, in violation of Utah Code Ann. § 76–6–302 (1995); twelve counts of aggravated kidnaping, a first degree felony, in violation of Utah Code Ann. § 76–5–302 (1995) (amended 1995, 1996); and one count of possession of a dangerous weapon by a restricted person, a second degree felony, in violation of Utah Code Ann. § 76–10–503 (1995). After reaching a plea agreement, Montoya pleaded guilty to two counts of aggravated robbery, three reduced counts of kidnaping, and one count of attempted aggravated kidnaping. As the trial court noted, "in light of the numerous other counts that were dismissed ... [Montoya was] shown leniency in this case by virtue of the plea." As a result of the plea bargain, the twelve aggravated kidnaping charges, all of which carried minimum mandatory sentences, were either dismissed or reduced to lesser charges not carrying minimum mandatory sentences.

Montoya has an extensive history of criminal activity. Beginning in 1984, Montoya's juvenile record includes twenty-nine referrals, including shoplifting, habitual truancy, destruction of property, aggravated assault, receiving stolen property, and burglary. His adult record, beginning in 1990, includes guilty pleas to charges of assault, disturbing the peace, vehicle burglary and theft by receiving stolen property (pleaded guilty to lesser offense), and aggravated robbery (pleaded guilty to lesser offense), along with numerous additional charged offenses. Montoya is also a known gang leader.

Montoya also has a substandard parole history. While on parole for the first time, he was arrested for possessing a stolen firearm, consuming alcohol as a minor, interfering in an arrest, and providing false information to police. During his second parole, Montoya absconded from a half-way house and was later arrested. Finally, while on parole for a third time, though he participated in gang education awareness talks, Montoya remained an active gang leader. He also failed to secure employment or participate in counseling as ordered under parole agreements.

## STANDARD OF REVIEW

"We review the sentencing decisions of a trial court for abuse of discretion." *State v. Houk,* 906 P.2d 907, 909 (Utah App.1995). "Abuse of discretion 'may be manifest if the actions of the judge in sentencing were "inherently unfair" or if the judge imposed a "clearly excessive sentence."'" *Id.* (quoting *State v. Wright,* 893 P.2d 1113, 1120 (Utah App.1995) (citations omitted in original)). Moreover, "[a]n abuse of discretion results when the judge 'fails to consider all legally relevant factors.'" *State v. McCovey,* 803 P.2d 1234, 1235 (Utah 1990) (quoting *State v. Gibbons,* 779 P.2d 1133, 1135 (Utah 1989)). "An appellate court may only find abuse 'if it can be said that no reasonable [person] would take the view adopted by the trial court.'" *Houk,* 906 P.2d at 909 (quoting *Wright,* 893 P.2d at 1120 (alteration in original)).

## ANALYSIS

### I. Consecutive Sentences

■ Montoya first argues that by imposing consecutive rather than concurrent sentences the trial court abused its discretion because it failed to properly consider all the legally relevant sentencing factors. When imposing concurrent or consecutive sentences in felony cases, a trial court is limited by Utah Code Ann. § 76–3–401 (1995) (amended 1995).[4] Section 76–3–401 provides, inter alia:

4. Our analysis is unaffected by the 1995 amendment to § 76–3–401, which added the current subsection (2) and renumbered the remaining subsections. *See* Utah Code Ann. § 76–3–401(2) (Supp.1996) (adding subsection mandating consecutive sentences for offenses "committed while

(1) A court shall determine, if a defendant has been adjudged guilty of more than one felony offense, whether to impose concurrent or consecutive sentences for the offenses

. . . .

(2) A court shall consider the gravity and circumstances of the offenses and the history, character, and rehabilitative needs of the defendant in determining whether to impose consecutive sentences.

(3) A court may impose consecutive sentences for offenses arising out of a single criminal episode as defined in Section 76–1–401.

Montoya contends the trial court failed to properly consider the "rehabilitative needs" factor of subsection (2).[5]

Montoya relies on two Utah Supreme Court cases in support of his consecutive sentencing challenge, *State v. Smith,* 909 P.2d 236 (Utah 1995), and *State v. Strunk,* 846 P.2d 1297 (Utah 1993). In *Smith,* the defendant was convicted of four first degree felonies: aggravated kidnaping, rape of a child, and two counts of sodomy on a child. 909 P.2d at 238. On each of the four counts, the trial judge imposed a sentence of fifteen-years-to-life, the greatest minimum mandatory sentence available, and ordered that the sentences run consecutively. *Id.* In vacating the trial court's sentencing determination, the supreme court declared that a "highly important factor in deciding whether to impose consecutive or concurrent sentences is that the Legislature . . . has opted to give the Board of Pardons wide latitude in deciding what a maximum sentence ought to be." *Id.* at 244. The court noted, "[t]he Board is in a far better position than a court to monitor a defendant's subsequent behavior and possible progress toward rehabilitation while in prison and to adjust the maximum sentence accordingly." *Id.* Hence, because the minimum mandatory sixty-year sentence imposed was deemed "tantamount to a minimum mandatory life sentence," depriving the

Board of "discretion to release defendant, irrespective of his progress," the supreme court declared the trial judge's sentencing decision "unreasonable and an abuse of discretion," and remanded the case for resentencing. *Id.* However, the court explicitly limited its ruling to the facts of Smith's case. *Id.* at 245.

In *Strunk,* the defendant was convicted of the capital offense of first degree murder, as well as child kidnaping and aggravated sexual abuse of a child, both first degree felonies carrying minimum mandatory sentences. 846 P.2d at 1298. The defendant was sentenced to life imprisonment for the capital offense and received minimum mandatory fifteen-year and nine-year sentences for the kidnaping and sexual abuse offenses, all three sentences were to run consecutively. *Id.* The supreme court ruled that the trial court "abused its discretion in failing to sufficiently consider defendant's rehabilitative needs in light of his extreme youth and the absence of prior violent crimes," *id.* at 1302, because "the twenty-four-year term robs the Board of Pardons of any flexibility to parole Strunk sooner," *id.* at 1301. Accordingly, the defendant's sentence was vacated and the case remanded for resentencing.

Montoya's case presents facts dissimilar to those found determinative in *Smith* and *Strunk.* In this case, extreme youth and the absence of prior violent crimes are not at issue. Montoya, a twenty-three-year old male, has a "history of aggressive, criminal behavior with the gang culture," including aggravated assault, robbery, possession of a dangerous weapon by a restricted person, and battery. In addition, the trial court's sentence does not infringe upon the discretion of the Board of Pardons. Indeed, the result of the plea bargain was to eliminate all minimum mandatory sentences from the charges against Montoya, and, as the trial court noted, the Board of Pardons has signif-

---

the defendant is imprisoned or on parole unless the court finds and states on the record that consecutive sentencing would be inappropriate").

5. As for the other factors listed in subsection (2), Montoya concedes "the gravity and circumstances of this case arguably weigh against concurrent sentences," and that "the trial court for the most part acted within proper bounds in assessing Montoya's history and character."

icant discretion over the actual number of years Montoya will spend in prison.

The trial court also specifically addressed Montoya's rehabilitative needs: "It's clear that you had previous opportunities, several opportunities for rehabilitation as a juvenile and an adult, and these unfortunately did not succeed." Also, the presentence report summarized a mental health professional's assessment of Montoya that characterized him as pessimistic, apathetic, emotionally inhibited and controlled, maladaptive under stress, assaultive, resentful, hostile, and aggressive. These characteristics, combined with Montoya's "dull to normal range of intellectual ability with an IQ score of 81, ... [along with his] difficulty in thinking and concentrating," severely limit the prospect of a successful rehabilitation.

Based on Montoya's rehabilitative and criminal histories, his psychological evaluations, and the trial court's specific consideration of his rehabilitative needs, the consecutive sentences imposed are neither clearly excessive nor inherently unfair, but rather are reasonable in light of the circumstances. Hence, the trial court did not abuse its discretion by imposing consecutive sentences.

### II. Firearm Enhancements

 Next, Montoya contends, and the State concedes, that the trial court abused its discretion by imposing three determinate three-year sentence enhancements. Utah Code Ann. § 76–3–203(1) (1995) (amended 1995) provides:[6]

> In the case of a felony of the first degree ... if the trier of fact finds a firearm ... was used in the commission or furtherance of the felony, the court shall additionally sentence the person convicted for a term of one year to run consecutively and not concurrently; and the court may additionally sentence the person convicted for an indeterminate term not to exceed five years to run consecutively and not concurrently.

The plain language of section 76–3–203(1) does not empower the trial court to impose a determinate sentence exceeding one year.

*See State v. Higginbotham,* 917 P.2d 545, 551 (Utah 1996) (remanding case for trial court correction of illegal determinate two-year sentence enhancement); *State v. Beltran-Felix,* 922 P.2d 30, 37–38 (Utah App.1996) (remanding case for trial court correction of illegal determinate five-year sentence enhancements). Thus, the determinate three-year firearm sentence enhancement imposed by the trial court is illegal, and we remand this case to the trial court to correct the enhancement. *See* Utah R.Crim. P. 22(e) ("The court may correct an illegal sentence, or a sentence imposed in an illegal manner, at any time.").

### CONCLUSION

We affirm the trial court's imposition of consecutive sentences and remand for the trial court to correct the firearm sentence enhancements.

GREENWOOD and JACKSON, JJ., concur.

---

6. The 1995 amendment to § 76–3–203, which replaced the term "firearm" with "dangerous weapon" throughout the section, does not alter our analysis. *See* Utah Code Ann. § 76–3–203 (Supp.1996).