STATE v. DUNCAN.

No. 6535.  Decided December 16, 1942.  (132 P. 2d 131.)

See 23 C. J. S., Criminal Law, sec. 1499; 39 Am. Jur., 162.

*J. Grant Iverson,* of Salt Lake City, for appellant.

*Grover A. Giles,* Atty. Gen., and *C. N. Ottosen,* Asst. Atty. Gen., for respondent.

PER CURIAM.

Defendant was convicted on a hit-and-run driving charge under Sec. 19, Chap. 52, Laws of Utah 1941. He assigns as error (1) the refusal of the trial court to recall the jury and permit him to reopen the case to have a witness subpoenaed by the State testify as to the exact time the offense was committed, and (2) the denial of his motion for a new trial based in part on newly discovered evidence.

Prior to trial defendant gave notice of a defense alibi, which notice recited that he was at Coconut Grove Ballroom in Salt Lake City between 9:15 and 10:45 P. M. on the night of June 12, 1942, which period covered the entire range of time the prosecution claimed was the time at which the offense occurred. Both the identity of the offender and the time when the crime was committed were vital matters.

On June 12, 1942, while crossing the street at the intersection of Second West and First South streets in Salt Lake City, Mike Valdez was struck and injured by an automobile operated by a hit-and-run driver. On observing that the vehicle which knocked Valdez down failed to stop or render assistance, William S. Root and R. D. Harris and wife, who were driving in the opposite direction, quickly made a U-turn and began pursuit of the hit-and-run driver. They succeeded in overtaking him and he got in their car and returned with them to the scene of the injury. He explained he did not have a driver's license and he was afraid of being placed under arrest for driving without such license. These witnesses parked their car near the scene of the injury and left the offender in their car, expecting the police to arrest him while they were rendering assistance to the injured man. Ten minutes later, when they returned to their car, the hit-and-run driver was gone.

Eugene J. Goff was the owner of the automobile driven by the hit-and-run driver. Goff, Delbert Dexter and defendant Farren J. Duncan, with their partners, attended the dance at Coconut Grove during the evening of June 12. During the intermission defendant was outside of the ballroom. On his return he reported to Goff that his car was gone—that it could not be found at the place where it had been parked. Goff immediately telephoned the police station and reported his car had been stolen. When he first attempted to park in front of Coconut Grove his car collided with another car, and he assumed reference was made to the accident earlier in the evening when the officer told him he should appear at the station at once and report the accident. Defendant accompanied Goff to the police station, the three young ladies remaining at the dance with Dexter. When defendant and Goff arrived at police headquarters, Goff was called in and questioned by officer Southworth. Defendant sat on a bench in the corridor of the station outside the office where Goff was being interrogated.

Sometime later that night, while Goff was still being questioned, Mr. Root and Mr. and Mrs. Harris arrived at the police station, apparently for the purpose of identifying Goff, the owner of the automobile as the driver who struck down Valdez. They all saw Duncan, but none of them identified him as the driver until after seeing Goff. Harris had the impression the hit-and-run driver wore brown clothes. Defendant was not wearing brown, but Dexter who remained at Coconut Grove wore a brown suit. The police then sent for Dexter. In the meantime, Root, Harris and Mrs. Harris informed the investigating officer that Duncan resembled the man who returned to the scene of the accident with them. After Dexter arrived, one of them remarked that if Duncan had worn Dexter's clothes it would be possible to positively identify Duncan. The day prior to the trial, Mrs. Harris remarked to one of the girls who accompanied these young men that she thought Dexter might have been the driver, because of his features and light curly

hair, and that she wondered why Dexter had not been questioned, and that she was puzzled when Dexter came into the station. She further said that until Dexter came in she was positive it was Duncan.

These three witnesses were uncertain as to the time when the offense occurred, one stating that it was sometime between 9:30 and 10:30 P. M., possibly close to 10:00 P. M. The injured man and step-son testified they left home about 9:30 P. M. to go to the post office, and that their home was about 4 blocks from where the automobile hit them. They said they walked slowly, and estimated they covered the distance in about 15 minutes. The step-son believed it was about 9:45 P. M. when they were hit.

Goff, the owner of the car, was called to testify on behalf of the State. He admitted he left the keys in his car in his excitement over the collision with another car while attempting to park in front of the ballroom at 8:45 P. M. He stated they went into Coconut Grove about 9:20 P. M., that he danced two or three dances with his girl friend before he exchanged a dance with defendant. He said he was still dancing with his girl friend when the fifth dance was being played. The numbers of the dances are indicated at the orchestra stand. Adolph Brox, the orchestra conductor, testified that the schedule of dances calls for the first number to begin at 9:00 P. M. and intermission at 10:30 P. M.; that there are ten dances before intermission, each one lasting about ten minutes. Brox was a disinterested witness. His testimony did not contradict the testimony of Goff, but tended to fix the time of the dance numbers more definitely. If Goff's testimony was accurate, that the party arrived at the ballroom at 9:20 P. M., the third dance number just started. He danced at least numbers three and four with his young lady friend, and apparently number five as well, for he testified he was still dancing with her when he saw number five showing at the orchestra stand. If he exchanged number six with Duncan, that was about 9:50 P. M., and if he exchanged the previous one with Duncan in-

stead, the dance number commenced about 9:40 P. M.

The prosecution practically admitted defendant was at Coconut Grove until 9:45 P. M., but the deputy district attorney claimed Duncan very well could have left at that time, driving Goff's car because the keys were left in it, and could have reached the scene of the offense seven blocks or a mile distant, just a few minutes later. Such claim was made notwithstanding Valdez and his step-son estimated the time as 9:45 P. M. when they were struck down by the Goff automobile. Root, Harris, and Mrs. Harris were all uncertain as to the time the offense was committed, and on cross-examination admitted that while Duncan resembled the offender, they were not positive in their identification of Duncan. Mrs. Harris stated that it might have been someone else.

After the jury retired, Seymour Hansen who was subpoenaed by the prosecution to testify on behalf of the State, but who was not called to testify, approached counsel for defendant and informed him that he operated the automobile which was immediately behind the car which struck Valdez, and that when he saw what happened he immediately parked his car to render assistance to the injured man. He informed Mr. Iverson, counsel for defendant, that he had an appointment which he was interested in keeping, and that on parking his car he pulled out his watch to ascertain the exact time; that it was 9:40 P. M. Counsel for defendant immediately informed the court of what Mr. Hansen had volunteered, and he made a motion to recall the jury and to reopen the case to have Hansen tesify as to the time the injury to Valdez occurred. The court denied the motion on the assumption that it had no authority to recall the jury after the jurors had retired for deliberation in the effort to arrive at a verdict. There was some subsequent discussion between the court and counsel, as to the authority of the court to reopen the case, when the jury brought in a verdict of guilty.

Defendant filed a motion for new trial, based in part on newly discovered evidence. In support of the motion, an affidavit by Seymour Hansen was filed reciting what he claimed he saw and the fact his watch was running neither slow nor fast; that it was 9:40 P. M. when he parked his car and looked at his watch; and that he was subpoenaed by the State but not called to testify, although he was in the courtroom ready to testify. An affidavit was also procured from the foreman of the jury who stated that the time factor was one of the deciding elements, and that the jurors might have reached an entirely different result if they had been able to hear testimony from Hansen who was not acquainted with defendant and who was a disinterested witness. Affidavits were also signed by Root, Harris, and Mrs. Harris, which would tend to negative any possibility that they were positive as to the identification of Duncan as the hit-and-run driver.

The trial court took the position that the court had no discretionary authority to reopen the case, but in denying the motion for a new trial the court expressed the view that there was nothing to show Hansen's watch indicated the correct time.

There would be no merit in the statutory authorization of the trial court to grant a new trial by reason of newly discovered evidence, "material to the defendant and which he could not with reasonable diligence have discovered and produced at the trial," if the trial court had to be certain the jury would believe the newly discovered evidence. If there is nothing offered to controvert the affidavits as to evidence newly discovered by the moving party, for purposes of ruling on the motion for a new trial, the court must assume that the facts alleged in the affidavits will be produced in court in the event a new trial is granted. Of course, if the facts or matters alleged, indicate the evidence is merely cumulative or that the evidence would be incompetent or otherwise inadmissible, or if such evidence would not likely change the result, there would be

no merit in granting a motion for a new trial on such ground, and the court would not abuse its discretion by denying the motion unless granting the motion were warranted for other reasons.

However, in this case, the time of the commission of the offense was a vital factor in determining whether or not the State could possibly prove beyond a reasonable doubt that defendant was the one who committed the crime. The State admitted in effect that Duncan was at the ballroom until 9:45 P. M. If he left at that time and got in the car, he would have had to drive seven blocks to reach the scene of the injury, or approximately one mile. He could not have made it in much less than five minutes, which would have put him at the scene of the offense ten minutes after it occurred if Hansen's proposed testimony were believed by the jury. If Hansen had been called by the State and had testified in accordance with the recitals in his affidavit, the State would have been bound by his testimony. If the court in the exercise of sound discretion had granted the motion to recall the jury and to permit defendant to reopen the case, assuming Hansen had testified substantially in accordance with the recitals in his affidavit, his testimony would have tended to show that the crime was committed approximately ten minutes before defendant could possibly have arrived at the scene. If his testimony had been given on reopening of the case, the jury might well have believed it, and thereby it could have operated to destroy the possibility of convincing the jury beyond a reasonable doubt that defendant committed the crime.

The evidence proffered on the motion for new trial was not evidence which could have been discovered by defendant and introduced at the trial unless the court had permitted defendant to reopen the case. It was not discovered until after the jury retired to commence deliberations. Even if the facts to which Hansen was prepared to testify had been known to the prosecution, such evidence was still newly discovered evidence as far as the defendant and his counsel

were concerned. It was not cumulative evidence nor evidence which would tend to contradict the testimony of defendant. If the defendant was not the hit-and-run driver, he would not be likely to know what time the offense occurred. The proposed testimony from Hansen would have tended to establish the alibi of defendant by a disinterested witness. As pointed out in *Jensen* v. *Logan City*, 89 Utah 347, 380, 57 P. 2d 708, 723:

"* * * Where disinterested testimony on the vital point in a case is very scant, newly discovered testimony on that point appearing from affidavits in support of the motion, for a new trial to be apparently reliable, when it appears that the movant for the new trial was not guilty of indiligence in failing to obtain the witness for the trial, and that there is no element of holding such witness in reserve for purposes of obtaining a new trial * * * and it appears likely that such evidence would change the result, a new trial should be granted. While the granting or refusing of the motion lies in the sound discretion of the court, where there is grave suspicion that justice may have miscarried because of the lack of enlightenment on a vital point which new evidence will apparently supply, and the other elements attendant on obtaining a new trial on the ground of newly discovered evidence are present, it would be an abuse of sound discretion not to grant the same. * * *"

The court clearly erred in not granting the motion for a new trial. The prosecution did not attempt to controvert the statements contained in the affidavit of Hansen. It is rather strange that Hansen, who was the operator of the car closest to the vehicle driven by the hit-and-run offender, was subpoenaed to testify on behalf of the State, but by an oversight or for some other reason which the record does not disclose, he did not have the opportunity to reveal to the jury his knowledge of what occurred and of the time when it occurred. It was an abuse of discretion for the court to deny the motion for a new trial under such circumstances.

Owing to the fact the court had authority to grant a new trial, under the circumstances it also had the right to recall the jury and to reopen the case to enable the defendant to

have Hansen testify. The purpose of a trial is to obtain the facts. If testimony is available which would tend to show the innocence of a defendant, the court and counsel for both sides should aid in the presentation of such testimony to prevent a miscarriage of justice. The jury sould be aided in every reasonable manner to obtain all of the competent material and relevant facts essential to enable the jurors to determine the guilt or innocence of the accused. The mere fact the jury has retired to deliberate is unimportant if it becomes apparent the jurors did not receive all of the essential facts. The court has a right to recall them if they have not already brought in a verdict.

The trial court had the discretionary power to reopen the case to permit Hansen to testify, and in view of the nature of the evidence presented by the State in this case, when it was discovered that Hansen witnessed the commission of the offense and was prepared to testify as to the exact time when it occurred, and that he came into court on process served by the State, it was the duty of the court in the interest of justice to reopen the case. Had the court done so, it is possible this case might not have reached this court.

The judgment of the district court is reversed, and the cause is remanded with directions to set aside the verdict and vacate the sentence.