2003 UT App 52

**STATE of Utah, Plaintiff and Appellee,**

v.

**Norm SMITH, Defendant and Appellant.**

No. 990236–CA.

Court of Appeals of Utah.

Feb. 21, 2003.

**650**

Margaret P. Lindsay, Aldrich Nelson Weight & Esplin, Provo, for Appellant.

Mark L. Shurtleff, Attorney General, and Jeffrey S. Gray, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BILLINGS, ORME, and THORNE.

## OPINION

THORNE, Judge.

¶ 1 Norm Smith appeals from convictions for using a concealed weapon in the commission of a crime of violence, a second degree felony, in violation of Utah Code Ann. § 76–10–504(3) (1995), and two counts of aggravated assault, both third degree felonies, in vio-

lation of Utah Code Ann. § 76–5–103 (1995). We affirm in part and reverse in part.

## BACKGROUND [1]

¶ 2 On the morning of April 9, 1996, Smith and his friend Clayton Call drove to Smith's property in Virgin, Utah. Once there, Smith suspected that someone had vandalized or stolen some of his personal property. Both men left to look for Smith's missing property. Smith retrieved a holstered pistol from his residence and placed it around his waist. Smith then telephoned his wife and told her to report the suspected theft and vandalism.

¶ 3 Both men returned to the property, where Smith spoke to his neighbors, Ron and Sharon Felton. Afterwards, for reasons not clear from the record, Smith began pacing up and down the property and throwing dirt clods at the Felton's home, prompting Sharon Felton to call 911.

¶ 4 Eventually, Call left, but returned to warn Smith that two sheriff cars were heading toward the property. Shortly before Deputies Johnny Owen and Lorin Orvin arrived, Sharon Felton observed Smith pull his shirt down, covering the pistol. After the two deputies exited their vehicles, Deputy Owen advised Smith that they had received a complaint that he was brandishing a weapon. When Deputy Owen asked Smith if he had a weapon, Smith lifted up his shirt to expose his pistol and placed his hand on the butt of the gun. Deputy Owen asked Smith to surrender the gun, but Smith refused.

¶ 5 Deputy Owen slowly moved toward Smith and repeatedly asked him to surrender the gun. Smith backed away, turned, ran, and hid in a partially-constructed building on the property. The deputies pursued him, positioning themselves outside two separate windows.

¶ 6 Once in the building, Smith attempted to conceal himself behind several garbage cans. The deputies urged Smith to surrender his weapon. When Smith responded that

1. " 'On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal.' " *State v. Bluff*, 2002 UT 66, ¶ 2, 52 P.3d

1210 (quoting *State v. Daniels*, 2002 UT 2, ¶ 2, 40 P.3d 611), *cert denied*, —— U.S. ——, 123 S.Ct. 999, 154 L.Ed.2d 914, 2003 U.S. Lexis 935 (2003).

he could shoot the deputies, Deputy Orvin told Smith that although he may very well shoot one of them, the other would shoot Smith before he could shoot them both. Smith then dropped to his knees and pointed his pistol directly at Deputy Orvin. Deputy Orvin took cover and radioed for assistance.

¶ 7 After several minutes of negotiation, Smith surrendered, and was arrested and charged with carrying a concealed dangerous weapon, two counts of aggravated assault, and interfering with a lawful arrest. A jury convicted Smith on each count. The trial court suspended prison terms of one to fifteen years on the second-degree felony and zero to five years on each aggravated assault charge. The court also sentenced Smith to serve 60 days in the county jail, pay $2,000 in fines, $300 in costs, and serve 36 months probation. Smith now appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 8 Smith first argues that he was denied his Sixth Amendment right to call witnesses and to confront the witnesses against him. When reviewing a trial court's decision not to allow a defendant to call a witness or to limit the cross-examination of a witness, we "review the legal rule applied for correctness and the application of the rule to the facts of the case for an abuse of discretion." *State v. Chavez*, 2002 UT App 9, ¶ 17, 41 P.3d 1137.

■ ¶ 9 Smith next argues that the trial court erred by refusing to merge the aggravated assault charges with the concealed weapon charge. "Merger issues present questions of law, which we review for correctness." *State v. Diaz*, 2002 UT App 288, ¶ 10, 55 P.3d 1131, *cert denied*, 63 P.3d 104, 2003 Utah Lexis 4 (2003).

■ ¶ 10 Smith next argues that the evidence was insufficient to support his conviction for carrying a concealed weapon in the second degree. "In considering an insuffi-

ciency-of-evidence claim, we review the evidence and all reasonable inferences that may be drawn from it in a light most favorable to the verdict." *State v. Dunn*, 850 P.2d 1201, 1212 (Utah 1993).

■ ¶ 11 Smith also argues that the trial court committed plain error in failing to instruct the jury that threatening with a dangerous weapon is a lesser included offense of aggravated assault. To establish plain error, Smith must show that: "(i) an error was made; (ii) the error should have been obvious to the trial court; and (iii) the error was harmful, so that in the absence of the error, a more favorable outcome was reasonably likely." *State v. Helmick*, 2000 UT 70, ¶ 9, 9 P.3d 164.

■ ¶ 12 Finally, Smith argues that his trial counsel rendered ineffective assistance. We review this claim as a matter of law. *See State v. Maestas*, 1999 UT 32, ¶ 20, 984 P.2d 376.

## ANALYSIS

### I. Right to Call and Confront Witnesses

■ ¶ 13 Smith first asserts that he was denied his Sixth Amendment right to call a witness when the trial court denied his request to call Ron Felton.[2] To establish a violation of his constitutional right to call a witness, "a criminal defendant ... must make some possible showing that the testimony of the absent witness 'would have been both material and favorable to his defense.' " *State v. Schreuder*, 712 P.2d 264, 274 (Utah 1985) (quoting *United States v. Valenzuela–Bernal*, 458 U.S. 858, 873, 102 S.Ct. 3440, 3449, 73 L.Ed.2d 1193 (1982)). "Testimony is material, and its exclusion therefore prejudicial, if there is a reasonable probability that its presence would affect the outcome of the trial." *Id.* at 275.

---

2. At trial, Smith sought to call Ron Felton to rebut Deputy Owen's testimony that Smith had been agitated during his encounter with the deputies. The trial court found the evidence too attenuated to be relevant and denied Smith's request. In contrast, on appeal Smith argues that Ron Felton's testimony was relevant to rebut Sharon Felton's testimony. However, Smith did not renew his request to call Ron Felton after Sharon Felton testified and does not argue plain error on appeal. Thus, we review only the trial court's ruling that Ron Felton's testimony was too attenuated to be relevant.

¶ 14 Here, Smith asked to call Ron Felton as a witness. Smith had spoken with Ron Felton several hours before the deputies arrived and Smith alleged that Ron Felton would have testified that Smith had been calm during that conversation. Smith argued that Ron Felton's testimony was necessary to rebut testimony that he was agitated and excited when the deputies first arrived at the property. The trial court excluded Ron Felton's testimony because it found the testimony to be too attenuated from the encounter with the deputies to be relevant or material.

¶ 15 Smith's demeanor hours before the deputies arrived has no bearing on whether he, in fact, carried a concealed weapon, assaulted the deputies, or interfered with a lawful arrest hours later. Furthermore, Smith's own witness, Call, testified that immediately before and during the incident, Smith was angry and agitated. Smith also acknowledged, in his own testimony, that he was "irritated" with the sheriff's office and its deputies. In light of the testimony of both Smith and Call, and the intervening time lapse, it is extremely unlikely that Ron Felton's testimony would have affected the outcome of the trial. Thus, the testimony was not sufficiently relevant or material and the trial court did not violate Smith's Sixth Amendment rights when it excluded the testimony.

■■■■ ¶ 16 Smith next argues that the trial court violated his Sixth Amendment right to confront the witnesses against him when the trial court limited his cross-examination of Deputy Orvin. This court has held that trial judges may impose reasonable limits on cross-examination if interrogation is " 'repetitive or only marginally relevant.' " *Chavez*, 2002 UT App 9 at ¶ 19, 41 P.3d 1137 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986)).

¶ 17 It is within the trial court's permitted range of discretion to limit cross-examination on matters which are either marginally relevant or pointlessly repetitive. *See id.* Here, prior to cross-examination, Deputy Orvin tes-

tified for approximately thirty-four minutes over the course of two days. Smith then cross-examined him for approximately fifty minutes before the trial court ordered a recess. During that recess, the court advised Smith that he was imposing a thirty-minute time limit on the remainder of Smith's cross-examination because the court believed that Smith was "straying off into the minutiae." After thirty minutes of additional cross-examination, the court informed Smith that he had reached his time limit. However, upon Smith's request, the court allowed him to continue asking questions regarding his surrender. When it became obvious that the cross-examination was no longer relevant, the trial court directed Smith to stop.

¶ 18 Thus, Smith was given over eighty minutes to cross-examine Deputy Orvin. Smith chose to use this time to question Deputy Orvin about such things as the location of the deputies' cars, the type of animals on the property, the characteristics of the fence, and other matters irrelevant to the proceedings. A defendant is not entitled to an unlimited or pointless examination of witnesses. *See generally id.* After reviewing the record, we conclude that the trial court's limitation did not prevent Smith from eliciting testimony necessary to his defense. The trial court simply restricted Smith from questioning the witness about matters which were only marginally relevant or that were pointlessly repetitive of earlier testimony. Thus, Smith was given an adequate opportunity to cross-examine Deputy Orvin and his Sixth Amendment right to confront a witness against him was not violated.

## II. Merger of Lesser Included Offense

■■■■ ¶ 19 Smith next argues that aggravated assault is a lesser included offense of second-degree use of a concealed weapon and the trial court erred by refusing to merge the two crimes.[3] "Merger is a judicially-crafted doctrine available to protect criminal defendants from being twice punished for committing a single act that may violate more than one criminal statute." *State v. Diaz*, 2002 UT App 288, ¶ 17, 55 P.3d 1131. This principle has been codified at

**3.** Smith preserved this issue by raising it in a    pretrial motion.

Utah Code Ann. § 76–1–402(3) (1999), which provides that "[a] defendant may be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense."

¶ 20 Here, to convict Smith of carrying a concealed weapon in the second-degree, the State had to prove that Smith used a concealed weapon in the commission of a "crime of violence," in this case aggravated assault. Utah Code Ann. § 76–10–504(3) (1995). Accordingly, to convict Smith of a second degree felony the State had to prove each and every element of aggravated assault plus the elements of the weapon charge. Consequently, the third-degree aggravated assault was "established by proof of the same or less than all of the facts required to establish" the second-degree weapons offense. Utah Code Ann § 76–1–402(3)(a). Pursuant to a traditional merger analysis, the underlying aggravated assault charges should merge into the second-degree felony. *See, e.g., State v. Finlayson,* 2000 UT 10, ¶ 16, 994 P.2d 1243 (noting "the inquiry of whether one crime is a lesser included offense of a greater crime under section 76–1–402, [and merges therein] turns on the statutorily defined elements of the two crimes").

¶ 21 To counter Smith's contention that the crimes should merge, the State relies upon the reasoning found in *State v. McCovey,* 803 P.2d 1234 (Utah 1990). In *McCovey,* the Utah Supreme Court concluded that an underlying felony did not merge into a felony murder charge. *See id.* at 1239. Central to the court's conclusion was its determination that the felony murder statute was an enhancement statute. *See id.* at 1238–39. The court stated that "enhancement statutes are different in nature than other criminal statutes." *Id.* at 1237. By creating an enhancement statute the legislature communicated its intent that underlying crimes not merge with the specific enhanced crime. *See generally id.* at 1239; *see also State v. Bisner,* 2001 UT 99, ¶ 63, 37 P.3d 1073 (noting the

court in *McCovey* "explicitly premised [its] holding [not to merge] on the legislature's intent").

¶ 22 After considering Utah Code Ann. § 76–10–504 in light of *McCovey,* we agree with the State and conclude that it is most properly characterized as an enhancement statute to which the legislature did not intend merger to apply. The legislature determined that "[i]f the concealed firearm is used in the commission of a crime of violence as defined in [s]ection 76–1–501, and the person is a party to the offense" then the concealed weapon offense is enhanced to a second degree felony. Utah Code Ann. § 76–10–504(3). The penalties imposed by section 76–10–504 increase proportionally to the increased risk to the public, and this graduated punishment scale is indicative of an enhancement statute. Moreover, "[i]t is the prerogative of the legislature to prescribe the punishment for crimes. Included therein is the authority to increase the degree of crime, where instruments of violence, such as explosives or firearms are used." *State v. Angus,* 581 P.2d 992, 994–95 (Utah 1978)(footnote omitted).

¶ 23 We conclude that the legislature intended section 76–10–504 to act as an enhancement statute and thereby communicated its intent that the underlying violent crime remain separate from the concealed weapon charge. Thus, we conclude that Smith's claim that his aggravated assault charges should have merged with the concealed weapon charge is without merit.

### III. Insufficiency of the Evidence

¶ 24 Smith claims that the evidence was insufficient to sustain the jury's verdict that he used a concealed firearm in the commission of a crime of violence.[4] Smith asserts that the State failed to meet its burden of proof in showing that he "knowingly and intentionally" concealed the firearm. However, section 76–10–504(3) does not specify a

---

4. Smith later argues that his trial counsel was ineffective because he failed to request a directed verdict on his concealed weapon charge when the State presented no evidence that Smith did not have a permit to carry a concealed weapon. Smith, however, does not argue this as a basis for finding the evidence insufficient, for during his defense he testified that he did not possess such a permit. Consequently, we reserve our discussion of the State's failure to present such evidence during its case-in-chief to Smith's ineffectiveness argument.

culpable mental state. Thus, contrary to Smith's argument, the State was not required to prove intent or knowledge; rather, if the evidence was sufficient to show that Smith's conduct was reckless, the State has met its burden. *See* Utah Code Ann. § 76–2–102 (1999) (noting when an offense is not a strict liability offense and does not specify a culpable mental state, "intent, knowledge, or recklessness shall suffice to establish criminal responsibility").

¶ 25 Here, the State presented evidence that Smith picked up a holstered pistol at his residence and put it around his waist. The State also presented evidence that just before the deputies arrived at the property, Smith untucked his shirt so that it obscured the pistol from view. The deputies testified that upon arriving at the property, they did not see the pistol and had to question Smith about its existence. Upon admitting that he had a pistol, Smith had to raise his shirt to reveal it. This is sufficient evidence from which a reasonable jury could have determined that Smith recklessly or intentionally concealed the pistol.

¶ 26 Smith also claims the evidence was insufficient to establish that he used a concealed firearm in the commission of a crime of violence because the pistol became unconcealed during the aggravated assault. The plain language of the statute does not require that the commission of the crime be contemporaneous with the concealment of the weapon. Nor does Smith present case law, either from Utah or elsewhere, to support such a proposition. Thus, we conclude that the trial court did not commit error in refusing to set aside the verdict on this basis.

### IV. Plain Error

¶ 27 Smith next claims that the trial court committed plain error in failing to instruct the jury that threatening with a dangerous weapon, pursuant to Utah Code Ann. § 76–10–506, is a lesser included offense of aggravated assault. To establish plain error, Smith must show that "(i) an error was made; (ii) the error should have been obvi-

ous to the trial court; and (iii) the error was harmful, so that in the absence of the error, a more favorable outcome was reasonably likely." *Helmick,* 2000 UT 70 at ¶ 9, 9 P.3d 164.

¶ 28 Smith relies on *State v. Oldroyd,* 685 P.2d 551 (Utah 1984), to support his claim of plain error. In *Oldroyd,* the Utah Supreme Court held that the defendant's use of a weapon could have constituted either aggravated assault or threatening with a dangerous weapon and that the failure of the trial court to instruct the jury on this lesser included offense, after the defendant requested such an instruction, was reversible error. *See id.* at 554–56.

¶ 29 Smith's reliance upon *Oldroyd* is misplaced. In *Oldroyd,* the defendant requested the trial court to instruct the jury on the crime of threatening with a dangerous weapon because the evidence at trial supported such an instruction. *See id* at 553. In contrast, Smith never requested such an instruction and maintained his innocence throughout the trial. Smith's defense was that he was unable to comply with the deputies' request to surrender his weapon because he received conflicting instructions as to how to surrender the weapon.

¶ 30 In light of a claim of total innocence, it was not plain error for the trial court to fail to instruct the jury on the lesser included crime of threatening with a dangerous weapon when there was no request to do so by either party. "[A]n accused may choose not to request instructions on lesser included offenses as a matter of trial strategy, usually in the belief that he can defeat the greater charge, but might not be able to defeat a lesser included offense." *State v. Howell,* 649 P.2d 91, 94 (Utah 1982). Smith and his trial counsel could have made a reasonable strategic decision not to instruct the jury on the crime of threatening with a dangerous weapon out of fear that the jury might convict Smith of that crime if it was not able to agree that he was guilty of aggravated assault.[5] Thus, the trial court did not err in failing to give this instruction.

---

5. Smith also raises the failure to request an instruction on a lesser included offense as grounds for finding his trial counsel ineffective. However-

er, when omitting an instruction appears to be a matter of trial strategy, it will not be a basis for finding trial counsel ineffective. *Cf. State v. Win-*

### V. Ineffective Assistance of Counsel[6]

¶ 31 Smith claims that his counsel was ineffective because he did not request a dismissal of the concealed weapon charge after the State failed to introduce evidence in its case-in-chief that Smith did not have a concealed weapon permit. "To show ineffective assistance of counsel, a defendant must show (1) that counsel's performance was so deficient as to fall below an objective standard of reasonableness[,] and (2) that but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different." *Wickham v. Galetka*, 2002 UT 72, ¶ 19, 61 P.3d 978 (quotations and citations omitted).

¶ 32 Pursuant to both section 76–10–504(1)(b)[7] and jury instruction # 13D, the State was required to prove that Smith did not have a valid permit to carry a concealed weapon. However, in its case-in-chief, the State presented no evidence that Smith lacked such a permit. The State's failure to present evidence to satisfy this necessary element of the offense would have entitled Smith to a dismissal on that count. *See, e.g., State v. Kihlstrom*, 1999 UT App 289, ¶ 8, 988 P.2d 949, *cert denied*, 4 P.3d 1289 ("If the prosecution has failed to present sufficient evidence to support its case, the trial court should dismiss.").

¶ 33 Trial counsel's failure to argue this lack of evidence after the State rested does not appear to have served a tactical purpose at trial; nor has the State offered a possible tactical purpose on appeal. "When no possible explanation or tactical reason exists for such a decision, we have held that the first part of the [ineffective assistance of counsel] test is satisfied." *Finlayson*, 2000 UT 10, ¶ 24, 994 P.2d 1243 (citation omitted). We conclude that trial counsel's failure to raise this lack of evidence as a basis for dismissal of the charge is "so deficient as to fall below an objective standard of reasonableness." *Wickham*, 2002 UT 72 at ¶ 19, 61 P.3d 978.

¶ 34 Moreover, we conclude that "but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different." *Id.* (quotation and citation omitted). Had trial counsel raised this lack of evidence, there is a reasonable probability that the trial court would have dismissed the concealed weapon charge. *Cf. Kihlstrom*, 1999 UT App 289 at ¶ 8, 988 P.2d 949.

¶ 35 The State argues that even had Smith's counsel moved for a directed verdict based on a lack of evidence, the State could have "properly and with little difficulty ... moved to reopen and supply the missing evidence." *State v. Lawrence*, 120 Utah 323, 234 P.2d 600, 601 (1951). We are unconvinced. A trial court has discretionary au-

---

*ward*, 941 P.2d 627, 635–36 (Utah Ct.App.1997) (noting an ineffectiveness claim failed because defendant could not disprove that omission of the jury instruction was a "conscious trial strategy").

6. While Smith was represented by counsel at his trial, he took a very active role in his own representation. For example, the trial court allowed Smith to conduct direct and cross-examinations of witnesses and to present argument to the court. The trial court's decision to allow Smith to have counsel and yet appear to represent himself (on several occasions throughout the proceedings, Smith claimed he was acting either as co-counsel or pro se) is in conflict with our jurisprudence. *See State v. Bakalov*, 1999 UT 45, ¶ 15, 979 P.2d 799 (noting that the right to represent oneself and the Sixth Amendment right to counsel are "mutually exclusive rights"). After reviewing the record, we conclude that Smith's active participation in his own defense frustrated the judicial process. *See id.* at ¶ 17 (noting that "[a] criminal defendant may be asked, in the interest of orderly procedures, to choose between waiver [of counsel] and another course of action" (quotations and citations omitted)(second alteration in original)). We strongly caution trial courts from allowing defendants to represent themselves and have counsel, for it creates a situation where a defendant may both represent himself at trial and argue ineffective assistance of counsel on appeal.

7. Section 76–10–504 provides

[A] person without a valid concealed firearm permit who carries a concealed dangerous weapon which is a firearm and that contains no ammunition is guilty of a class B misdemeanor, but if the firearm contains ammunition the person is guilty of a class A misdemeanor.

. . . .

If the concealed firearm is used in the commission of a crime of violence ... and the person is a party to the offense, the person is guilty of a second degree felony.

Utah Code Ann § 76–10–504(1)(b), (3) (1999).

thority to determine whether to reopen a case to admit additional evidence. *See State v. Duncan,* 102 Utah 449, 132 P.2d 121, 125 (1942). Here, where the State obviously failed to introduce a necessary element of the crime, we are not convinced that the trial court would have necessarily allowed the State to reopen its case and supply the missing evidence. Accordingly, because of trial counsel's ineffective assistance related to this single charge, we reverse Smith's conviction for second-degree concealment of a dangerous weapon and remand for a new trial on that count.[8]

## CONCLUSION

¶ 36 The trial court did not deny Smith his Sixth Amendment right to call witnesses, or to confront witnesses against him. The evidence was sufficient to convict Smith for aggravated assault, carrying a concealed weapon in the second degree, and resisting a lawful arrest. The trial court properly denied Smith's request to merge the aggravated assault charges into the second-degree concealed weapon charge. It was not error

for the trial court to fail to instruct on a lesser included offense nor was trial counsel ineffective for not demanding such an instruction.

¶ 37 However, we conclude that Smith's trial counsel was ineffective in failing to move for a directed verdict after the State failed to present evidence that Smith did not possess a valid concealed weapon permit during its case in chief. Accordingly, we affirm Smith's convictions for aggravated assault and resisting a lawful arrest, but reverse and remand Smith's conviction for carrying a concealed dangerous weapon for a new trial.

¶ 38 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge, and GREGORY K. ORME, Judge.

---

8. Remanding for a new trial on this count does not violate the tenets of double jeopardy, because we reverse Smith's conviction for "trial error" and not for insufficiency of the evidence.

> "[R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect."

*State v. Lamorie,* 610 P.2d 342, 347 (Utah 1980) (alterations in original) (quoting *Burks v. United States,* 437 U.S. 1, 15, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978)).

In *State v. Higginbotham,* 917 P.2d 545 (Utah 1996), the Utah Supreme Court excluded all evidence erroneously admitted at trial, *see id.* at 550, and concluded that without the evidence, the state had failed to prove "an essential element of the charge." *Id.* The court then reversed and remanded for a new trial on that count. *See id.* at 551. Relying upon *Lamorie,* 610 P.2d at 347, the court stated:

> The court in *Lamorie* held, as we do here, that the prosecution failed to prove an essential element of the charge. The court remanded for a new trial after reversing the conviction, holding that doing so does not place the accused in double jeopardy because the error giving rise to the reversal, i.e., the trial court's erroneous introduction of evidence, was "trial error" as distinguished from insufficiency of the evidence.

*Higginbotham,* 917 P.2d at 550 (citations omitted).

Here, the basis for our reversal is that Smith was deprived of his Sixth Amendment right to effective assistance of counsel, a determination that implies nothing regarding Smith's guilt or innocence. Rather, our conclusion that Smith's trial counsel was ineffective speaks to an "error in the trial process and ... not an error in judgment concerning the quantum of evidence needed to convict and sentence." *See State v. Palmer,* 257 Neb. 702, 600 N.W.2d 756, 780 (1999) (Connolly, J., concurring), *cert denied,* 528 U.S. 1192, 120 S.Ct. 1248, 146 L.Ed.2d 106 (2000). Thus, the error giving rise to the reversal in this case is trial error and remanding for a new trial does not violate double jeopardy.