2005 UT 57

**STATE of Utah, Plaintiff, Respondent, and Cross–Petitioner,**

v.

**Norm SMITH, Defendant, Petitioner, and Cross–Respondent.**

**Nos. 20030341, 20030342.**

Supreme Court of Utah.

Sept. 2, 2005.

Mark L. Shurtleff, Att'y Gen., Jeffrey S. Gray, Brock R. Belnap, Asst. Att'ys Gen., Salt Lake City, for plaintiff.

Margaret P. Lindsay, Aaron P. Dodd, Provo, for defendant.

DURHAM, Chief Justice:

¶ 1 This case is before us on cross-petitions for certiorari. We are first asked to determine whether the offense of aggravated assault under Utah Code section 76–5–103 is a lesser included offense that, under Utah Code section 76–1–402(3), should have merged with the offense of second-degree use of a concealed weapon under Utah Code section 76–10–504(3), as it existed in 1996. We conclude that Utah Code section 76–10–504 is an enhancement statute and that therefore the two offenses do not merge. We are further asked to determine whether the court of appeals properly determined that the defendant's counsel was ineffective for failing to force the State to prove that the defendant did not have a concealed weapons permit and, if so, whether the appropriate remedy was to remand the case for a new trial. We conclude that the lack of a concealed weapons permit is not an element of the offense under Utah Code section 76–10–504(3) and that the court of appeals therefore erred in concluding that defense counsel was ineffective.

## BACKGROUND

¶ 2 The defendant, Norm Smith, was convicted in a jury trial of carrying a concealed dangerous weapon under Utah Code section 76–10–504(3), a second degree felony; two counts of aggravated assault under Utah Code section 76–5–103(1)(b), third degree fel-onies; and interfering with a lawful arrest.[1] Among other issues, Smith argued on appeal that the trial court should have merged the aggravated assault charges with the concealed weapon charge, and that his trial counsel was ineffective for failing to request dismissal of the concealed weapon charge after the State rested without introducing evidence that Smith did not have a concealed firearm permit. *State v. Smith*, 2003 UT App 52, ¶¶ 7, 9, 12, 19, 31, 65 P.3d 648.

¶ 3 The court of appeals rejected Smith's merger claim on the basis that, in accord with this court's opinion in *State v. McCovey*, 803 P.2d 1234 (Utah 1990), the legislature intended Utah Code section 76–10–504 to be an enhancement statute, rendering the merger doctrine inapplicable to an offense charged under the provision. *Smith*, 2003 UT App 52 at ¶ 22, 65 P.3d 648. In reaching this conclusion, the court of appeals looked primarily to the structure of section 76–10–504, observing that "[t]he penalties imposed by section 76–10–504 increase proportionally to the increased risk to the public, and this graduated punishment scale is indicative of an enhancement statute." *Id.* The court also appeared to rely on principles of common sense, reasoning that the legislature has " 'the authority to increase the degree of crime, where instruments of violence, such as explosives or firearms are used.' " *Id.* (quoting *State v. Angus*, 581 P.2d 992, 994–95 (Utah 1978)).

¶ 4 The court of appeals was, however, persuaded by Smith's ineffective assistance claim, concluding that because "the State was required to prove that Smith did not have a valid permit to carry a concealed weapon" under Utah Code section 76–10–504, the trial court would have been forced to dismiss the concealed weapon charge had Smith's counsel requested it to do so. *Id.* at ¶¶ 32–34. The court therefore reversed Smith's conviction on this charge and remanded for a new trial. *Id.* at ¶ 35. In doing so, the court of appeals noted that the remand would not violate double jeopardy principles because its reversal was for " 'trial error' and not for insufficiency of the evidence." *Id.* at ¶ 35 n. 8.

---

1. The underlying facts of this case are set forth in *State v. Smith*, 2003 UT App 52, ¶¶ 2–7, 65 P.3d 648.

¶ 5 Smith petitioned this court for certiorari review of the court of appeals's decisions that the merger doctrine did not apply to Utah Code section 76–10–504 and that remand was the appropriate remedy for the ineffectiveness of his trial counsel. The State cross-petitioned, arguing that Smith's counsel was not ineffective because the lack of a concealed weapon permit was not an element of the charged offense under Utah Code section 76–10–504(3). This court has jurisdiction pursuant to Utah Code section 78–2–2(3)(a) (2002).

## STANDARD OF REVIEW

¶ 6 On certiorari, we review the court of appeals on questions of law for correctness. *State v. Leatherbury*, 2003 UT 2, ¶ 7, 65 P.3d 1180; *State v. Weeks*, 2002 UT 98, ¶ 10, 61 P.3d 1000. Specifically, whether one crime is a lesser included offense, which merges with a greater included offense, is a legal question of statutory interpretation reviewed for correctness. *State v. Bluff*, 2002 UT 66, ¶ 37, 52 P.3d 1210. An ineffective assistance of counsel claim presents a question of law that is also reviewed for correctness. *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

## ANALYSIS

## I. APPLICATION OF MERGER DOCTRINE TO UTAH CODE SECTION 76–10–504

¶ 7 We first consider whether the court of appeals erred in concluding that the legislature intended Utah Code section 76–10–504 as an enhancement statute to which the merger doctrine, set forth in Utah Code section 76–1–402, would not apply. As the court of appeals observed, in its origin, " '[m]erger is a judicially-crafted doctrine available to protect criminal defendants from being twice punished for committing a single act that may violate more than one criminal statute.' " *State v. Smith*, 2003 UT App 52, ¶ 19, 65 P.3d 648 (quoting *State v. Diaz*, 2002 UT App 288, ¶ 17, 55 P.3d 1131). The motivating principle behind the merger doctrine is to prevent violations of constitutional double jeopardy protection. *State v. Lopez*, 2004 UT App 410, ¶ 8, 103 P.3d 153 ("Courts apply the merger doctrine as one means of alleviating the concern of double jeopardy that a defendant should not be punished twice for the same crime."); *see also Brown v. Ohio*, 432 U.S. 161, 169, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) ("[T]he [Double Jeopardy Clause] forbids successive prosecution and cumulative punishment for a greater and lesser included offense.").

¶ 8 This principle has been codified at Utah Code section 76–1–402(3). *See State v. Wood*, 868 P.2d 70, 90 (Utah 1993) (recognizing that the test for determining whether a conviction for two separate offenses violates the Double Jeopardy Clause "is essentially the same as that in Utah Code Ann. § 76–1–402(3)"); *State v. McCovey*, 803 P.2d 1234, 1235 (Utah 1990) (recognizing that convictions for both a greater and a lesser included offense would violate both the Double Jeopardy Clause and section 76–1–402(3)); *State v. Ross*, 951 P.2d 236, 241 (Utah Ct.App.1997) ("The [statutory] prohibition on conviction for lesser-included offenses flows from the double jeopardy clauses of the Utah and the United States Constitutions."). Section 76–1–402(3) provides that "[a] defendant may be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense." Utah Code Ann. § 76–1–402(3) (2003). The subsection further states that lesser included offenses are "established by proof of the same or less than all the facts required to establish the commission of the offense charged." *Id.* § 76–1–402(3)(a). Thus, "where the two crimes are 'such that the greater cannot be committed without necessarily having committed the lesser,' then as a matter of law they stand in the relationship of greater and lesser offenses, and the defendant cannot be convicted or punished for both." *State v. Hill*, 674 P.2d 96, 97 (Utah 1983) (quoting *State v. Baker*, 671 P.2d 152, 156 (Utah 1983)).

¶ 9 In *Hill*, we set forth a two-part test for determining whether a conviction for a second offense arising out of the same set of facts violates section 76–1–402(3), requiring a comparison of "the statutory elements of the two crimes [first] as a theoretical matter and

[second], where necessary, by reference to the facts proved at trial." *Id.* It is uncontested here that aggravated assault would constitute a lesser included offense of felony use of a concealed weapon under the two-part *Hill* analysis because the latter offense is defined as using a concealed weapon during the commission of a "crime of violence," which includes aggravated assault. Utah Code Ann. §§ 76–10–501(2)(b), –504(3) (1995).[2] In *McCovey*, however, this court in effect added a third step to the analysis, holding that in cases where the legislature intended a statute to be an enhancement statute, the merger doctrine set forth in section 76–1–402(3) does not apply. 803 P.2d at 1237. Here, the court of appeals agreed with the State that section 76–10–504 is an enhancement statute, but Smith argues it is not. We therefore focus our analysis on that question.

¶ 10 In *McCovey*, this court reasoned that "enhancement statutes are different in nature than other criminal statutes" because they single out particular characteristics of criminal conduct as warranting harsher punishment. *Id.* The court proceeded to rest its determination that the felony murder statute was an enhancement statute on an examination of "the nature and purpose" of the statute. *Id.* at 1238. The court concluded that "[i]n essence, [felony murder] is a strict liability offense that enhances an otherwise unintentional killing to second degree murder." *Id.*

¶ 11 Here, revisiting the issue of enhancement statutes and their relationship to section 76–1–402(3), we depart from *McCovey's* somewhat nebulous focus on a statute's "nature and purpose" and return to the core principle of statutory construction: " 'Where statutory language is plain and unambiguous, this Court will not look beyond to divine legislative intent. Instead, we are guided by the rule that a statute should be construed according to its plain language.' " *Id.* at 1240 (Durham, J., dissenting) (quoting *Allisen v. Am. Legion Post No. 134,* 763 P.2d 806, 809 (Utah 1988)). Section 76–1–402(3), by its plain language, requires the determination of a greater-lesser relationship between offenses to rest on a comparison of "the facts required to establish the commission of the offense[s] charged." Utah Code Ann. § 76–1–402(3)(a). The statute is devoid of any explicit indication that it should not apply whenever a court decides that the "nature and purpose" of a criminal provision warrants an exemption. We are therefore persuaded that, when considering whether the legislature intended to exempt an offense from operation of the merger doctrine, we must base our conclusion on an objective examination of the plain language and structure of the statute defining the offense. In other words, if the legislature intends to preclude section 76–1–402(3) from requiring merger in a specific instance, it must clearly indicate that the provision in question is intended to enhance the penalty for one type of offense when certain characteristics are present that independently constitute a different offense.[3] Only when such an explicit indication of legislative intent is present in the specific offense statute will we consider it appropriate to exempt that statute from operation of the general merger requirements in section 76–1–402(3).[4] Such a plain lan-

2. Utah Code section 76–10–504(3) has been amended to describe the use of a concealed firearm "in the commission of a *violent felony*" rather than a "crime of violence," and it now cites Utah Code section 76–3–203(5) for the relevant definition of "violent felony." Utah Code Ann. § 76–10–504(3) (2003) (emphasis added). Utah Code section 76–3–203(5), in turn, is an amended and recodified version of section 76–10–501(2)(b) and now defines "violent felony" rather than "crime of violence." *Id.* § 76–3–203(5) (2003). Unless otherwise indicated, all citations in this opinion are to the statutes as they existed at the time of the offenses at issue.

3. An example of such an express indication appears in Utah Code section 76–6–202, which first defines the crime of burglary as unlawfully entering or remaining in a building with the intent to commit certain listed offenses, Utah Code Ann. § 76–6–202(1)(a)–(g) (2003), and then specifies that a violation of the burglary statute is a "separate offense" from any of those offenses so listed, *id.* § 76–6–202(3). This language makes clear that the burglary statute imposes an enhanced penalty on those who would otherwise be considered guilty of the lesser crime of criminal trespass, *see id.* § 76–6–206, where that crime is committed in conjunction with an intent to commit one of the listed offenses.

4. While our opinion today supersedes the analysis this court followed in *McCovey*, we express no opinion on whether the felony murder statute at

guage analysis is also consistent with the constitutionally guaranteed double jeopardy interests that section 76–1–402(3) was designed to protect.

¶ 12 In accord with these principles, we consider whether section 76–10–504(3) operates as an enhancement provision or, alternatively, whether charges under that subsection must merge with charges for the underlying "crime of violence." Section 76–10–504 provides, in relevant part:

(1) Except as provided in Section 76–10–503 and in Subsections (2) and (3):

(a) a person who carries a concealed dangerous weapon which is not a firearm on his person or one that is readily accessible for immediate use which is not securely encased, as defined in this part, in a place other than his residence, property, or business under his control is guilty of a class B misdemeanor.

(b) a person without a valid concealed firearm permit who carries a concealed dangerous weapon which is a firearm and that contains no ammunition is guilty of a class B misdemeanor, but if the firearm contains ammunition the person is guilty of a class A misdemeanor.

(2) A person who carries concealed a sawed-off shotgun or a sawed-off rifle is guilty of a second degree felony;

(3) If the concealed firearm is used in the commission of a crime of violence as defined in Section 76–10–501, and the person is a party to the offense, the person is guilty of a second degree felony.

Utah Code Ann. § 76–10–504(1)–(3).

¶ 13 The plain language and structure of this statute demonstrate that subsection (3) is intended to operate as an enhancement provision, enhancing the penalty for the offense of carrying a concealed firearm when the offense is committed in conjunction with a crime of violence, a separate offense. The statute sets forth different levels of offenses depending on the circumstances in which carrying a concealed weapon occurs and on the type of weapon involved. As the court of

appeals correctly observed, "[t]he penalties imposed by section 76–10–504 increase proportionally to the increased risk to the public." *Smith,* 2003 UT App 52 at ¶ 22, 65 P.3d 648. We agree with the court of appeals that this structure, evidencing a "graduated punishment scale[,] is indicative of an enhancement statute." *Id.*

¶ 14 We also note that applying the merger requirement of section 76–1–402(3) to the offenses of carrying a concealed weapon and committing a crime of violence would lead to an absurd result in cases where the crime of violence itself carries a higher penalty than an offense under section 76–10–504(3), which is a second degree felony. *See Millett v. Clark Clinic Corp.,* 609 P.2d 934, 936 (Utah 1980) ("[S]tatutory enactments are to be so construed as to render all parts thereof relevant and meaningful, and ... interpretations are to be avoided which render some part of a provision nonsensical or absurd."). Many of the crimes of violence listed in section 76–10–501(2)(b) are first degree felonies. Thus, if section 76–1–402 applied to section 76–10–504(3), cases might arise in which a first degree felony would be considered a lesser included offense that was required to merge into a second degree felony. Such a result is prevented by our recognition that section 76–10–504(3) is an enhancement provision.

¶ 15 We thus affirm the court of appeals's conclusion that the charges against Smith for aggravated assault should not merge with the charge for using a concealed firearm in the commission of a crime of violence.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

¶ 16 Both Smith and the State challenge the court of appeals's conclusion in regard to Smith's ineffective assistance of counsel claim. Smith argues that the court of appeals correctly determined that Smith's right to counsel was violated but that the court's remand for a new trial contravened double jeopardy principles. The State argues that Smith's right to effective assistance of counsel was not violated because, contrary

---

issue in *McCovey* would be considered an enhancement statute under the analysis we now

adopt.

to the court of appeals's conclusion, the State was not required under section 76–10–504(3) to prove at trial that Smith did not have a valid concealed firearm permit. Because we agree with the State that Smith's right to effective assistance of counsel was not violated, we need not reach Smith's double jeopardy argument.

¶ 17 The court of appeals based its ruling that Smith received ineffective assistance of counsel on the conclusion that his counsel failed to hold the State to its burden of proof regarding an element of the crime. *Smith,* 2003 UT App 52 at ¶¶ 32–34, 65 P.3d 648. Specifically, the court of appeals held that in order to prove a violation of section 76–10–504(3), the State must demonstrate that Smith did not have a valid concealed firearm permit. *Id.* at ¶ 32.

¶ 18 We disagree with the court of appeals's reading of section 76–10–504(3). In reaching its conclusion that lack of a permit was an element of the crime defined in section 76–10–504(3), the court looked to the language of section 76–10–504(1)(b), which provides that "a person *without a valid concealed firearm permit* who carries a concealed dangerous weapon which is a firearm" is guilty of either a class A or B misdemeanor, depending on whether the firearm contains ammunition. Utah Code Ann. § 76–10–504(1)(b) (Supp.1995) (emphasis added). Section 76–10–504(3) then provides an enhanced penalty for the offense if "the concealed firearm is used in the commission of a crime of violence." *Id.* § 76–10–504(3). The court of appeals read the phrase "the concealed firearm" in subsection (3) as referring back to the weapon carried "without a valid concealed firearm permit" in subsection (1)(b) and thus inferred that lack of a permit was an element of the offense defined in subsection (3).

¶ 19 Even assuming the court of appeals's reading is correct, we do not agree that the State was required to prove lack of a permit. Rather, we understand the possession of a valid concealed firearm permit to be an affirmative defense that the defendant may invoke to escape conviction under section 76–10–504(1)(b). To conclude otherwise would be to render meaningless Utah Code section

76–10–523, which explicitly states that "[t]he provisions of Subsections 76–10–504(1)(a), [and] (1)(b) . . . do not apply to any person to whom a permit to carry a concealed firearm has been issued pursuant to Section 53–5–704." *Id.* § 76–10–523(2) (1995). Exemptions from laws, particularly when based on possession of a license or permit, such as that contained in section 76–10–523, are typically construed as affirmative defenses, partly because a defendant is in a better position to prove he has a permit than is the State to prove that he lacks such a permit. *See, e.g., State v. Bowdry,* 337 N.W.2d 216, 218 (Iowa 1983) (concluding that the legislature "intended to place the onus on the person to produce the permit, since he, rather than the State, has personal knowledge regarding the existence of a permit if one does exist"); *Commonwealth v. Jones,* 372 Mass. 403, 361 N.E.2d 1308, 1311 (1977) ("The holding of a valid license brings the defendant within an exception to the general prohibition against carrying a firearm, and is an affirmative defense. Absence of a license is not an 'element of the crime,' as that phrase is commonly used. In the absence of evidence with respect to a license, no issue is presented with respect to licensing." (citations omitted)); *Seattle v. Parker,* 2 Wash.App. 331, 467 P.2d 858, 859–60 (1970) (placing on the defendant the burden to raise facts indicating possession of a license based on the rule that "[w]here the facts lie more immediately within the knowledge of the defendant, the onus probandi should be his"); *see also State v. Swenson,* 838 P.2d 1136, 1138 (Utah 1992) (holding that the defendant had the initial burden to put forth evidence that he was eligible for an exemption from securities laws); *State v. Knoll,* 712 P.2d 211, 214 (Utah 1985) (recognizing that "forc[ing] the prosecution to prove a negative" is "a burden the law does not often impose").

¶ 20 Moreover, section 76–10–504(1) expressly excludes subsections (2) and (3) from its requirements. Utah Code Ann. § 76–10–504(1) ("Except as provided in Section 76–10–503 and in Subsections (2) and (3) . . . ."). Section 76–10–523 also fails to exempt firearm permit holders from operation of section 76–10–504(3). *Id.* § 76–10–523(2). We con-

clude from these exclusions and omissions that the possession of a valid permit does not even qualify as an affirmative defense where a defendant has used a firearm during the commission of a crime of violence.

¶ 21 We therefore hold that Smith's counsel was not ineffective for failing to require the State to prove Smith lacked a valid concealed weapons permit, and we reverse the court of appeals's order of remand and reinstate Smith's conviction under section 76–10–504(3).[5]

## CONCLUSION

¶ 22 For the reasons set forth above, we hold that Utah Code section 76–10–504(3) operates as an enhancement of the offense of unlawful carrying of a concealed weapon, and that the charges against Smith under Utah Code section 76–5–103 for aggravated assault therefore do not merge with the charge under Utah Code section 76–10–504(3). We affirm the court of appeals's holding on that issue. However, we reverse the court of appeals's remand for a new trial because we conclude that Utah Code section 76–10–504(3) does not require the State to prove the defendant's lack of a concealed weapon permit as an element of the crime, and that Smith's counsel was therefore not ineffective.

¶ 23 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.

---

**5.** Citing no authority in support of his assertion, Smith argues that the actual requirements of section 76–10–504(3) are irrelevant to the question of whether his counsel was ineffective because the jury instructions, whether rightly or wrongly, clearly placed the burden on the State to prove Smith lacked a valid concealed weapon permit. However, for the reasons explained by the United States Supreme Court in *Lockhart v.*

*Fretwell*, 506 U.S. 364, 371, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), we conclude that a defendant cannot meet the prejudice prong of an ineffective assistance of counsel claim by relying on a statutory interpretation that the appellate court recognizes as incorrect, even if the trial court relied on that erroneous interpretation in formulating its jury instructions.