**2021 UT 38**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Respondent,*

*v.*

SAUL MARTINEZ,
*Petitioner.*

No. 20191053
Heard April 14, 2021
Filed July 29, 2021

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Richard D. McKelvie
No. 151907946

Attorneys:

Sean D. Reyes, Att'y Gen., Nathan Anderson, David A. Simpson, Ass't Solic. Gens., Tony F. Graf, Salt Lake City, for respondent

Nathalie S. Skibine, Lacey Cole Singleton, Salt Lake City, for petitioner

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUSTICE PEARCE, and JUSTICE PETERSEN joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1    Saul Martinez was convicted of both felony discharge of a firearm and attempted murder. He moved to vacate the felony discharge counts under the doctrine of merger, asserting that the two sets of charges arose out of the "same acts" (gunshots fired at a man he believed to be having an affair with his wife) and were thus subject to merger under Utah Code section 76-1-402(1). The State opposed the motion. It noted that the merger doctrine is subject to an exception where there is "an explicit indication of legislative intent" to provide for conviction of two crimes that would otherwise merge. *See State v. Bond*, 2015 UT 88, ¶ 70, 361

P.3d 104 (citation omitted). And it asserted that the legislature had provided such an indication in Utah Code section 76-5-203(5)(a), a provision expressly foreclosing merger for any "predicate offense described in" the murder statute "that constitutes a separate offense." The State claimed that felony discharge is a separate offense "described in" subsection (1) of the murder statute as a "predicate offense." *See* UTAH CODE § 76-5-203(1)(v), (5)(a). And it accordingly contended that Martinez was subject to conviction and sentencing on both sets of criminal charges.

¶2　The district court denied the motion. It acknowledged that the "evidentiary underpinnings" of the two sets of crimes were "the same." And it noted that the motion raised important questions of statutory interpretation. But it upheld the State's view and concluded that it could address the concerns regarding evidentiary overlap as a matter of sentencing—and did so by imposing sentences that were to run concurrently.

¶3　The court of appeals affirmed. *See State v. Martinez*, 2019 UT App 166, 452 P.3d 496. It held that the legislature had "explicitly indicated its intent" to preclude merger of the crimes at issue in this case. *Id.* ¶ 21. And in so doing it rejected two separate arguments advanced by Martinez for avoiding the application of Utah Code section 76-5-203(5)(a) to this case—(1) that the statute is limited to "murder charges premised on a felony-murder theory," *id.* ¶ 22; and (2) that it "does not apply to attempt crimes," *id.* ¶ 23.

¶4　On the first point, the court of appeals concluded that felony discharge qualifies as a "predicate offense" described in subsection (1) of the murder statute even where such offense does not function as a necessary element of murder—as it would with a charge of felony murder. *Id.* ¶¶ 22–23. On the second point, the court asserted that "both murder and attempted murder are evaluated using the same statutory elements." *Id.* ¶ 23. And on that basis it held that "the prohibition against a predicate offense merging with murder also prevents that offense from merging with attempted murder." *Id.*

¶5 We granted Martinez's petition for certiorari in recognition of the significant questions of statutory interpretation presented. And we review the decision of the court of appeals for correctness, without affording any deference to its analysis. *Estate of Faucheaux v. City of Provo*, 2019 UT 41, ¶ 9, 449 P.3d 112.

¶6    We agree with the court of appeals' analysis on the first point but disagree with its disposition of the second. And we reverse on that basis. We first hold that section 203(5)(a) encompasses any offense that is "described in" subsection (1) of the murder statute. Like the court of appeals, we conclude that this provision is not directed to "predicate offenses" that serve as necessary elements of felony murder. That application is covered separately by section 76-5-203(5)(b)—a provision that speaks to merger where a murder conviction is "based on" a predicate offense described in subsection (1). And on these and other grounds we find that the legislature has given an explicit indication of its intent to foreclose merger for any offense (like felony discharge) that is "described in" the statutory list of offenses.

¶7    We reach a different conclusion, however, with respect to the statute's application to the crime of attempted murder. We agree with the court of appeals that there is some overlap between the crimes of murder and attempted murder. But we also note that the overlap is incomplete—the crime of attempted murder is established on the basis of disparate elements, and is treated distinctly for purposes of sentencing. The latter point is particularly significant given that the effect of the doctrine of merger is ultimately a matter of sentencing. And we accordingly conclude that the legislature has not explicitly stated its intent to foreclose the general rules of merger as applied to the crime of attempted murder.

I

¶8    "A defendant may be prosecuted in a single criminal action for all separate offenses arising out of a single criminal episode." UTAH CODE § 76-1-402(1). The code puts limits on punishment for multiple crimes arising out of such an episode, however. When "the same act of a defendant . . . establish[es] offenses which may be punished in different ways under different provisions" of the code, "the act shall be punishable under only one such provision." *Id.* This is sometimes referred to as the principle of "same act" merger.

¶9    "A defendant may be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense." *Id*. § 76-1-402(3). But again the code imposes limits. A defendant "may not be convicted of both the offense charged and the included offense" where an offense is "included" when (a) "[i]t is established by proof of the same or

less than all the facts required to establish the commission of the offense charged"; (b) "[i]t constitutes an attempt, solicitation, conspiracy, or form of preparation to commit the offense charged or an offense otherwise included therein"; or (c) "[i]t is specifically designated by a statute as a lesser included offense." *Id.* This is sometimes referred to as "included offense" merger.

¶10 These are the general rules of statutory merger. Yet these rules themselves are subject to specific legislative exceptions. The legislature may "exempt an offense from operation of the merger doctrine" by indicating its intent to provide for multiple criminal punishments for multiple crimes arising out of a single act, or for a greater offense and included offense. *State v. Smith*, 2005 UT 57, ¶ 11, 122 P.3d 615. And the courts credit such exemptions as a matter of statutory interpretation. We look to "the plain language and structure of the statute defining the offense" in question. *Id.* Under our case law, however, it is "[o]nly when . . . an explicit indication of legislative intent is present in the specific offense statute will we consider it appropriate to exempt that statute from operation of the general merger requirements" in section 76-1-402. *Id.*

¶11 The question presented is thus whether the legislature explicitly provided for multiple criminal punishments for the crimes at issue. Martinez was convicted and sentenced on charges of felony discharge and attempted murder. Both crimes were established on the basis of the "same act" of Martinez—gunshots fired at another person. And the code thus provides for merger of these crimes unless there is an explicit proviso in the code to the contrary. *See* UTAH CODE § 76-1-402(1).

¶12 The code speaks to merger of crimes antecedent to murder in section 76-5-203(5). That provision includes two separate subsections. Subsection (5)(a) states that "[a]ny predicate offense described in" subsection (1) of the murder statute "that constitutes a separate offense does not merge with the crime of murder." *Id.* § 76-5-203(5)(a). And subsection (5)(b) then provides that "[a] person who is convicted of murder, based on a predicate offense described in Subsection (1) that constitutes a separate offense, may also be convicted of, and punished for, the separate offense." *Id.* § 76-5-203(5)(b).

¶13 The questions presented concern the scope of and interaction between these provisions. Martinez advances two grounds for foreclosing the application of subsection (5)(a) to this

case. First, he interprets the reference to "predicate offense" in subsection (5)(a) as the adoption of a legal term of art. He asserts that there is no such thing as a "predicate offense" for non-felony murder. And because he was charged with attempted knowing or intentional murder, and could not have been charged with attempted felony murder,[1] he contends that the felony discharge counts do not qualify as predicate offenses under subsection (5)(a).

¶14 Even if subsection (5)(a) is deemed to extend to the intentional or knowing acts at issue in this case, Martinez nonetheless challenges the applicability of this provision on a second basis. He notes that he was charged and convicted only on *attempted murder*, and emphasizes that the statute speaks only of merger of predicate offenses and *murder*. And he asks us to conclude that the statute does not explicitly foreclose merger as to the crime of attempted murder.

¶15 We reject Martinez's first point but accept his second. And we reverse and remand to the district court for further proceedings consistent with this opinion.

II

¶16 Subsection 203(5)(a) encompasses any offense that is "described in" subsection (1) of the murder statute. It is not directed to "predicate offenses" that serve as necessary elements of felony murder—that application is covered separately by subsection 203(5)(b).

¶17 We base this conclusion on explicit indications of legislative intent in the text and structure of the statute. And we find Martinez's counterarguments insufficient to override our conclusion.

A

¶18 Subsection (5)(a) provides that "[a]ny predicate offense described in Subsection (1) that constitutes a separate offense does not merge with the crime of murder." The key question concerns

_____

[1] *State v. Bell*, 785 P.2d 390, 394 (Utah 1989) (explaining that "the crime of attempted murder requires proof of intent to kill," and thus "that attempted felony-murder does not exist as a crime in Utah").

the scope of the "predicate offense[s] described in Subsection (1)." And the statute gives an explicit answer to that question—in the statutory definition of "predicate offense" set forth in subsection (1).

¶19   The definition in subsection (1) is straightforward:

As used in this section, 'predicate offense' means:
(a) a clandestine drug lab violation under Section 58-37d-4 or 58-37d-5;
(b) child abuse, under Subsection 76-5-109(2)(a), when the victim is younger than 18 years of age;
(c) kidnapping under Section 76-5-301;
(d) child kidnapping under Section 76-5-301.1;
(e) aggravated kidnapping under Section 76-5-302;
(f) rape of a child under Section 76-5-402.1;
(g) object rape of a child under Section 76-5-402.3;
(h) sodomy upon a child under Section 76-5-403.1;
(i) forcible sexual abuse under Section 76-5-404;
(j) sexual abuse of a child or aggravated sexual abuse of a child under Section 76-5-404.1;
(k) rape under Section 76-5-402;
(l) object rape under Section 76-5-402.2;
(m) forcible sodomy under Section 76-5-403;
(n) aggravated sexual assault under Section 76-5-405;
(o) arson under Section 76-6-102;
(p) aggravated arson under Section 76-6-103;
(q) burglary under Section 76-6-202;
(r) aggravated burglary under Section 76-6-203;
(s) robbery under Section 76-6-301;
(t) aggravated robbery under Section 76-6-302;
(u) escape or aggravated escape under Section 76-8-309; or
(v) a felony violation of Section 76-10-508 or 76-10-508.1 regarding discharge of a firearm or dangerous weapon.

UTAH CODE § 76-5-203(1).

¶20 Martinez's felony discharge counts qualify as predicate offenses under this definition. By statute, "predicate offense *means*" the specified list of crimes. *Id.* (emphasis added). Felony discharge of a firearm is on the list. *Id.* § 76-5-203(1)(v). And the statutory definition is controlling. *See id.* § 68-3-11 (stating that words and phrases "defined by statute" must be "construed according to such peculiar and appropriate meaning or

definition"); *Grynberg v. Questar Pipeline Co.*, 2003 UT 8, ¶ 30, 70 P.3d 1 (holding that "[w]hen a term is defined within [a] statute, we look to that definition for guidance when interpreting the statute").

¶21 There is no statutory limitation or restriction on the list of crimes that are defined to fall within the prescribed definition of "predicate offense." And we are in no position to add such a qualifier.[2] Where "a definitional section says that a word 'means' something, the clear import is that is its *only* meaning." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 226 (2012). This is the statutorily prescribed meaning of "predicate offense described in Subsection (1) that constitutes a separate offense" under section 203(5)(a). And that meaning controls, and dictates that Martinez's felony discharge counts do not "merge with the crime of murder." *See* UTAH CODE § 76-5-203(5)(a).

B

¶22 Martinez challenges the above conclusion on two central grounds. We find neither argument sufficient.

1

¶23 Martinez first asserts that "predicate offense" is a term with specialized meaning in the law of murder. The premise of this position is correct as far as it goes. In our case law, "predicate offense" is often used in reference to a crime that serves as a necessary antecedent to or element of a charge of murder under Utah Code subsection 76-5-203(2)(d) — so-called felony murder.[3]

---

[2] *See Nevares v. M.L.S.*, 2015 UT 34, ¶ 34, 345 P.3d 719 (rejecting an interpretation of a statute on the ground that it ran afoul of the canon against "read[ing] into the statute a limitation not expressly stated on its face"); *Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 18, 248 P.3d 465 (declining to "add conditions . . . that are not set forth expressly by legislation"); *Orlando Millenia, LC v. United Title Servs. of Utah, Inc.*, 2015 UT 55, ¶ 84, 355 P.3d 965 (noting that even "grave constitutional questions . . . do[] not give us license to add a qualifier or limitation not evident on the face of the statute").

[3] *See, e.g.*, *State v. Fedorowicz*, 2002 UT 67, ¶¶ 52–54, 52 P.3d 1194 (child abuse as the "predicate offense" for a felony murder conviction); *State v. Graham*, 2006 UT 43, ¶ 39, 143 P.3d 268

(continued . . .)

And in that sense of the term, there is no such thing as a "predicate offense" for a charge of murder under other subsections of the murder statute.

¶24 Martinez correctly notes that the State is required to prove that the defendant committed an antecedent "predicate offense" only in connection with a charge of felony murder. If an actor "intentionally or knowingly" caused the death of another, caused death by an act "clearly dangerous to human life" with intent to cause "serious bodily injury to another," or caused death under circumstances evidencing a "depraved indifference to human life" while knowingly engaging in conduct creating "a grave risk of death to another," *see id.* § 76-5-203(2)(a)–(c), the crime of murder is established without a requirement of proof of a "predicate offense" in the sense of an antecedent crime. This shows that "predicate offense" *is* limited to felony murder under the operative definitions of the crime of murder in section 203(2). And that premise, taken alone, conceivably could be viewed to be reflected in the "predicate offense[s] described in Subsection (1)" that are thus subject to merger under section 203(5).

¶25 That conclusion is foreclosed, however, by a series of contrary indications in the language and structure of the statute.

(a)

¶26 A threshold problem with Martinez's reading is the statutory definition of "predicate offense" set forth in subsection (1). That definition, as noted, says that "predicate offense *means*" the crimes listed by statute. UTAH CODE § 76-5-203(1) (emphasis added). There is no other limitation or restriction on "predicate offense." And the statutory definition is thus not limited to

_____

(kidnapping as the "predicate offense" for a felony murder conviction). Sometimes we have also used "predicate offense" to describe an additional offense that heightens the offense of murder to its "aggravated" variant. *See, e.g., State v. Bond*, 2015 UT 88, ¶ 67, 361 P.3d 104 (referring to aggravated kidnapping as a predicate offense for aggravated murder and citing cases that explain that a "a predicate offense is [therefore also] a lesser included offense").

offenses that establish a basis for the crime of murder (as with felony murder).

¶27 A statutory "definition is virtually conclusive." SCALIA & GARNER, *supra*, at 228. It is not to be "replaced with another permissible meaning of the word on the basis of other textual indications." *Id.* And that principle forecloses Martinez's reading of the statute, for reasons explained above and on other grounds set forth below.

(b)

¶28 A second barrier to Martinez's view appears in the textual trigger for the anti-merger clause in subsection (5)(a)—and the contrast between that trigger and the one set forth in subsection (5)(b). Subsection (5)(a) forecloses merger "with the crime of murder" as to "[a]ny predicate offense *described in* Subsection (1) *that constitutes a separate offense.*" UTAH CODE § 76-5-203(5)(a) (emphasis added). (5)(b) has a different focus. It forecloses merger for any "person who is convicted of murder, *based on* a predicate offense described in Subsection (1)." *Id.* § 76-5-203(5)(b) (emphasis added). And the distinction between the triggers for these two provisions undermines Martinez's attempt to limit the former to crimes that form a basis for felony murder.

¶29 A crime that is enumerated in subsection (1) is "described" therein. And it is thus covered by the anti-merger clause in subsection (5)(a) so long as it "constitutes a separate offense." Subsection (5)(a) thus encompasses any and all separate crimes listed in subsection (1). Merger is foreclosed for all separate offenses "described in" the statutory definition without any requirement that the crime of murder be "based on" the separate offense.

¶30 The "based on" requirement, in fact, appears in subsection (5)(b). That provision forecloses merger for any "person who is convicted of murder, *based on* a predicate offense described in Subsection (1) that constitutes a separate offense." *Id.* § 76-5-203(5)(b) (emphasis added). The contrast with (5)(a) is striking. If the legislature had intended to limit subsection (5)(a) to murder "based on" a predicate offense it could have said so—as it did in subsection (5)(b). In speaking instead of any "predicate offense *described in* Subsection (1)," the legislature was explicitly stating its intent to foreclose merger not just for offenses that form the basis for felony murder (as it did in (5)(b)), but for all offenses enumerated as "predicate offenses" in subsection (1).

¶31 This highlights a distinct focus for the terms of subsections (5)(a) and (b). Subsection (5)(a) obviates merger for non-felony murder (where the separate offense is "described in" subsection (1)), while (5)(b) does so for felony murder (where the murder conviction is "based on" the separate offense). Martinez's interpretation treats these provisions as equally focused on felony murder. But such reading fails to credit the distinct terms of each provision. We reject it on that basis.

(c)

¶32 A final barrier to Martinez's view appears in the statute of limitations for predicate offenses. This provision first defines "predicate offense" as "an offense described in Section 76-5-203(1) *if* a person other than a party . . . was killed in the course of the commission, attempted commission, or immediate flight from the commission or attempted commission of the offense." *Id.* § 76-1-301(1)(b) (emphasis added). And it then provides that prosecution may be commenced at any time for "any predicate offense to a murder or aggravating offense to an aggravated murder." *Id.* § 76-1-301(2)(q).

¶33 The "if" in this statutory definition is significant. It reinforces the conclusion that a bare reference to "predicate offense[s]" "described in Section 76-5-203(1)" is not in itself limited to offenses that are necessary elements of felony murder. If "predicate offense" were always viewed in that way, there would be no need for the "if" clause—an express requirement (for the unlimited limitations period to apply) that the "predicate offense" "described in Section 76-5-203(1)" *also* involve the death of a person killed in the course of an offense that serves as an element of felony murder. And such reading would run afoul of the presumption of avoidance of an interpretation rendering "parts or words in a statute inoperative or superfluous." *Monarrez v. Utah Dep't of Transp.*, 2016 UT 10, ¶ 11, 368 P.3d 846 (citation omitted).

¶34 Martinez asserts that "predicate offense" is only and always a reference to a necessary element of felony murder. But that position is belied by the terms and conditions of the Utah Code. "Predicate offense" bears a distinct meaning as defined in section 76-5-203(1)—in an unadorned list of criminal offenses. And that defined meaning is carried forward in at least two places in the code: (a) in the terms and structure of subsection 203(5)(a)

(which, as noted above, covers all separate offenses "described in" subsection 203(1)); and (b) in the statute of limitations provision.

¶35 A crime can count as a "predicate offense" for felony murder purposes only if it serves as a necessary element of a charge of murder under Utah Code section 76-5-203(2)(d). And that is an important sense of "predicate offense" in our law. But this is not the only sense of this term. And it is not the sense of the term at work in the anti-merger clause in subsection 203(5).

2

¶36 Martinez also claims that the specialized sense of "predicate offense" is established by the purpose and legislative history of subsection 203(5). He asserts that this provision was added to the code (in 2008) in response to this court's decision in *State v. Ross*, 2007 UT 89, 174 P.3d 628, *abrogated in part by State v. Hummel*, 2017 UT 19, 393 P.3d 314, in an effort "to exempt merger in the context of felony murder and aggravated murder." And he asks us to adopt a limiting construction of subsection 203(5)(a) in light of this background.

¶37 The *Ross* decision undoubtedly was on the legislature's radar when it enacted the current language of subsection 203(5). And Martinez has identified statements in legislative hearings that suggest that some legislators may have been focused on merger as applied to felony murder and aggravated murder—as in the *Ross* case. *See Ross*, 2007 UT 89, ¶ 61 (concluding that convictions for aggravated murder and attempted aggravated murder may not stand when "when the attempted murder of [one person] was the only aggravating factor" in the completed murder of another person). But "[l]egislative history is not law." *Graves v. N.E. Servs., Inc.*, 2015 UT 28, ¶ 64, 345 P.3d 619. It does not "define the full breadth of [a] statute's scope" and cannot be taken to limit the reach of a statute to the problem giving rise to its enactment. *Id.* ¶ 65 (noting that that "would give primacy to legislative history, and only secondary significance to the duly enacted statute").

¶38 We "cannot presume that the legislature meant only to deal with [one] particular problem, as legislative bodies often start with one problem in mind but then reach more broadly in their ultimate enactment." *Hooban v. Unicity Int'l, Inc.*, 2012 UT 40, ¶ 17, 285 P.3d 766. And we have thus emphasized that "we cannot limit the reach of [a statute] to the ill that initially sparked [the legislature's] interest." *Id.*; *see also Myers v. Myers*, 2011 UT 65,

¶¶ 26–28, 266 P.3d 806 (noting that "the legislative debate" on a statute "was addressed mainly to the need to remove a loophole," but emphasizing that we cannot "construe" the legislation "as aimed at that purpose alone").

¶39 Martinez's argument fails on this basis. The legislative hearings that led to the enactment of subsection 203(5) admittedly reflect a proponent's view that the 2008 amendments were aimed at "codif[ying] existing . . . case law" on merger and "felony murder"—in providing that "if you're committing a felony and you cause the death of somebody else you can be convicted both of the murder . . . and the underlying felony." *Criminal Penalties Revisions: Hearing on S.B.150 Before the Sen. Judiciary, Law Enforcement, & Crim. Just. Comm.,* (Utah Jan 25, 2008), https://le.utah.gov/av/committeeArchive.jsp?timelineID=47738 (statement of Creighton Horton, Asst. Att'y Gen., minutes 42:22–40). And the felony murder application may well have been the "ill that initially sparked" the "interest" of the legislature in this issue. *See Hooban*, 2012 UT 40, ¶ 17. But this is just one application of the text that was enacted into law in 2008. It "cannot properly be read to define the full breadth of the statute's scope," *Graves*, 2015 UT 28, ¶ 65, where the text itself encompasses not just felony murder (in the subsection 203(5)(b) reference to murder "based on a predicate offense") but also intentional or knowing murder (in the subsection 203(5)(a) reference to a "predicate offense described in Subsection (1) that constitutes a separate offense").

¶40 We reject Martinez's reliance on the legislative history on this basis. We conclude, for the reasons noted above, that the statutory text expressly forecloses merger both for predicate offenses that are the basis for a murder charge and for those that are simply described in subsection 203(1). And we hold that the broad sweep of the statute cannot be limited by the cited statements in the legislative history.

III

¶41 The crimes of murder and attempted murder admittedly overlap. As the court of appeals noted, "there is no stand-alone attempted murder statute that is separate from the murder statute." *State v. Martinez*, 2019 UT App 166, ¶ 23, 452 P.3d 496. And "Martinez was charged with attempted murder pursuant to [Utah Code] section 76-5-203, the murder statute." *Id.*

¶42 The overlap is not complete, however. It is not quite right to say that "both murder and attempted murder are evaluated

using the same statutory elements." *Id*. There is a key difference in the *actus reus* required for each: murder requires proof that the defendant caused the death of another person, *see* UTAH CODE § 76-5-203(2), while attempted murder requires proof only of a "substantial step toward" such an act, *id*. § 76-4-101(1). And the two crimes are treated quite differently as a matter of sentencing. The minimum statutory sentence for murder is fifteen years, *see id*. § 76-5-203(3)(b), while the minimum for attempted murder is three years, *see id*. § 76-4-102(1)(c)(i).

¶43 These differences are significant under our case law on the law of merger. Our cases note that the general rules for statutory merger of criminal offenses are subject to legislative exemptions. But we have also required that any exemptions be set forth in "an explicit indication of legislative intent" in "the plain language and structure" of the code. *State v. Smith*, 2005 UT 57, ¶ 11, 122 P.3d 615. And we have held that the explicit indication must "demonstrate" that a particular provision of the criminal code "is intended to operate as an enhancement provision"—a statute "enhancing the penalty for" a given offense. *Id.* ¶ 13. Otherwise, "the general merger requirements in section 76-1-402[]" retain their applicability. *Id.* ¶ 11.

¶44 The general merger rule at issue provides that a single act that establishes multiple "offenses" in the criminal code "shall be punishable under only one such provision." UTAH CODE § 76-1-402(1). And the legislature has enacted an explicit exemption from that provision with regard to "the crime of murder." *Id.* § 76-5-203(5)(a). For that crime, the legislature has expressly stated that a "predicate offense described in" subsection (1) of the murder statute "does not merge." *Id.* That is an explicit statement of legislative intent that the offenses described in subsection 203(1) are to operate as "enhancing the penalty" for murder. *Smith*, 2005 UT 57, ¶ 13.

¶45 There is no such explicit statement, however, for the crime of attempted murder. And we find the lack of such statement controlling given the core difference in the elements of the two crimes and, perhaps most importantly, the substantial disparity in the statutorily prescribed sentence. These differences suggest that these are distinct crimes on the key ground at issue here. And they are sufficient to persuade us that the legislature has not enacted an explicit indication of intent to treat the offenses

described in subsection 203(1) as "enhancing the penalty" for attempted murder.[4]

¶46 We reverse on this ground. We hold that the anti-merger clause in subsection 203(5) does not extend to the crime of attempted murder.

IV

¶47 Utah Code section 76-5-203(5)(a) expressly forecloses merger for all offenses "described in" subsection (1) of the murder statute. It does not explicitly extend to the crime of attempted murder, however.

¶48 We reverse the court of appeals on this basis. And we remand to the district court for further proceedings consistent with this opinion.

———————

_____

[4] Perhaps there were members of the 2008 legislature who anticipated that the merger clause in section 203(5)(a) might extend not just to the "crime of murder" but to the crime of attempted murder as well. The two crimes, as noted, certainly overlap to some degree. But our cases require an explicit statement of intent to override the general rules of statutory merger in a provision providing for a sentencing enhancement. And the text that was enacted into law in 2008 falls short of so doing. A future legislature is certainly entitled to take a different course.